UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DAVID STEELE, | |
| *Plaintiff,* | |
| v. | Civil Action No. 22-3604 (CJN) |
| DEPARTMENT OF DEFENSE, et al. | |
| *Defendants*. | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
<u>MOTION TO DISSOLVE TEMPORARY RESTRAINING ORDER</u>**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

BACKGROUND ............................................................................................................. 1

I.    Legal Framework Governing the Adjudication of Security Clearance Applications .......... 1

    A.    Security Clearance Adjudication for Private Sector Contractors .......................... 2

    B.    Security Clearance Adjudication for Agency Personnel ....................................... 4

II.   Steele's Security Clearance Application........................................................................ 5

III.  Procedural Background .............................................................................................. 8

LEGAL STANDARD....................................................................................................... 9

ARGUMENT ................................................................................................................. 10

I.    Steele Cannot Establish a Likelihood of Success on the Merits ...................................... 11

    A.    Steele's Administrative Procedure Act Claim is Meritless................................. 11

        1.    There is no final agency action ................................................................ 11

        2.    Executive Order No. 10,865 governs Steele's clearance adjudication ..... 13

        3.    Even if Executive Order No. 12,968 applied, it creates no enforceable rights ............................................................................................... 14

        4.    The information Steele seeks exceeds Executive Order No. 12,968's scope ................................................................................................ 16

    B.    Steele's Due Process Claim is Meritless.......................................................... 16

    C.    Steele's FOIA and Privacy Act Claims are Meritless......................................... 18

II.   Steele Fails to Show that the Relief Requested is Needed to Prevent Irreparable Injury .. 21

III.  Steele Fails to Show a Favorable Balance of Equities...................................................... 23

IV.   Steele Fails to Show that the Public Interest Merits a Temporary Restraining Order ....... 23

CONCLUSION............................................................................................................... 23

## TABLE OF AUTHORITIES

**Cases**

*Action on Smoking & Health v. Dep't of Lab.*,
    28 F.3d 162 (D.C. Cir. 1994) ............................................................................. 11

*Adams v. Laird*,
    420 F.2d 230 (D.C. Cir. 1969) ........................................................................... 13

*Air Transp. Ass'n of Am. v. FAA*,
    169 F.3d 1 (D.C. Cir. 1999) ............................................................................... 14

*Al-Anazi v. Bush*,
    370 F. Supp. 2d 188 (D.D.C. 2005) ................................................................... 22

*Am. Ctr. for L. & Just. v. Dep't of Homeland Sec.*,
    573 F. Supp. 3d 78 (D.D.C. 2021) ..................................................................... 19

*Baldrige v. Shapiro*,
    455 U.S. 345 (1982) ........................................................................................... 19

*Benoit v. Dep't of Agric.*,
    608 F.3d 17 (D.C. Cir. 2010) ............................................................................. 21

*Bd. of Curators of Univ. of Mo. v. Horowitz*,
    435 U.S. 78 (1978) ............................................................................................. 17

*Biovail Corp. v. FDA*,
    448 F. Supp. 2d 154 (D.D.C. 2006) ................................................................... 22

*Citizens for Resp. & Ethics in Wash. v. FEC*,
    711 F.3d 180 (D.C. Cir. 2013) ........................................................................... 18

*CNN, Inc. v. FBI*,
    271 F. Supp. 3d 108 (D.D.C. 2017) ................................................................... 20

*Changji Esquel Textile Co. v. Raimondo*,
    40 F.4th 716 (D.C. Cir. 2022) ........................................................................... 14

*Crosby-Bey v. District of Columbia*,
    786 F.2d 1182 (D.C. Cir. 1986) ......................................................................... 16

*Davenport v. Int'l Bhd. of Teamsters*,
    166 F.3d 356 (D.C. Cir. 1999) ............................................................................. 9

**Cases (cont.)**

*Dep't of Navy v. Egan*,
    484 U.S. 518 (1988) ............................................................................... 1, 17, 22-23

*DiBacco v. Dep't of the Army*,
    234 F. Supp. 3d 255 (D.D.C. 2017) ........................................................... 13

*Dorfmont v. Brown*,
    913 F.2d 1399 (9th Cir. 1990) .................................................................. 18

*Elec. Priv. Info. Ctr. v. Dep't of Just.*,
    15 F. Supp. 3d 32 (D.D.C. 2014) .............................................................. 19

*Elec. Privacy Info. Ctr. v. Dep't of Com.*,
    356 F. Supp. 3d 85 (D.D.C. 2019) ............................................................ 21

*Envt'l Def. Fund, Inc. v. Massey*,
    986 F.2d 528 (D.C. Cir. 1993) .................................................................. 15

*Freedom Watch, Inc. v. Dep't of State*,
    925 F. Supp. 2d 55 (D.D.C. 2013) ............................................................ 20

*Friends of Animals v. Bureau of Land Mgmt.*,
    548 F. Supp. 3d 39 (D.D.C. 2021) ........................................................... 9-10

*Gayer v. Schlesinger*,
    490 F.2d 740 (D.C. Cir. 1973), *amend.*, 494 F.2d 1135 (D.C. Cir. 1974) ............................ 13

*Gill v. Dep't of Just.*,
    875 F.3d 677 (D.C. Cir. 2017) .................................................................. 17

*Gill v. Dep't of Just.*,
    Civ. A. No. 15-0824 (RMC), 2016 WL 3982450 (D.D.C. July 22, 2016) .............................. 18

*Gonzalez-Lora v. Dep't of Just.*,
    169 F. Supp. 3d 46 (D.D.C. 2016) ............................................................ 20

*Greater New Orleans Fair Hous. Action Ctr. v. Dep't of Hous. & Urb. Dev.*,
    639 F.3d 1078 (D.C. Cir. 2011) ................................................................ 10

*Helicopter Ass'n Intern., Inc. v. FAA*,
    722 F.3d 430 (D.C. Cir. 2013) .................................................................. 15

*Int'l Telecard Assoc., Inc. v. FCC*,
    166 F.3d 387 (D.C. Cir. 1999) .................................................................. 11

**Cases (cont.)**

*JEM Broad. Co. v. FCC*,
   22 F.3d 320 (D.C. Cir. 1994) ............................................................................... 23

*Lopez v. FAA*,
   318 F.3d 242 (D.C. Cir. 2003) ............................................................................. 15

*Marcum v. Salazar*,
   694 F.3d 123 (D.C. Cir. 2012) ............................................................................. 11

*McCormick v. District of Columbia*,
   752 F.3d 980 (D.C. Cir. 2014) ............................................................................. 17

*Meyer v. Bush*,
   981 F.2d 1288 (D.C. Cir. 1993) ........................................................................... 15

*Molerio v. FBI*,
   749 F.2d 815 (D.C. Cir. 1984) ............................................................................. 22

*Nat'l Lawyers Guild v. Exec. Off. of Immigr. Review*,
   456 F. Supp. 3d 16 (D.D.C. 2020) ......................................................................... 9

*Palmieri v. United States*,
   896 F.3d 579 (D.C. Cir. 2018) ............................................................................. 13

*Palmieri v. United States*,
   72 F. Supp. 3d 191 (D.D.C. 2014) ................................................................... 17-18

*Sack v. CIA*,
   53 F. Supp. 3d 154 (D.D.C. 2014) ....................................................................... 20

*Shapiro v. CIA*,
   170 F. Supp. 3d 147 (D.D.C. 2016) ..................................................................... 20

*Sherley v. Sebelius*,
   644 F.3d 388 (D.C. Cir. 2011) ............................................................................... 9

*Sierra Club v. Dep't of Energy*,
   825 F. Supp. 2d 142 (D.D.C. 2011) ..................................................................... 21

*Statewide Bonding, Inc. v. Dep't of Homeland Sec.*,
   980 F.3d 109 (D.C. Cir. 2020) ............................................................................. 16

*Swecker v. FERC*,
   Civ. A. No. 21-1590 (RCL), 2022 WL 4534944 (D.D.C. Sept. 28, 2022) ............ 21

**Cases (cont.)**

*United States v. Robel*,
   389 U.S. 258 (1967)..................................................................................... 13

*U.S. Info. Agency v. Krc*,
   905 F.2d 389 (D.C. Cir. 1990) ..................................................................... 18

*Vanover v. Hantman*,
   38 F. App'x 4 (D.C. Cir. 2002)..................................................................... 17

*Vanover v. Hantman*,
   77 F. Supp. 2d 91 (D.D.C. 1999) ................................................................ 17

*Vitarelli v. Seaton*,
   359 U.S. 535 (1959)..................................................................................... 17

*Williams & Connolly v. SEC*,
   662 F.3d 1240 (D.C. Cir. 2011) ................................................................... 19

*Winter v. Natural Res. Def. Council, Inc.*,
   555 U.S. 7 (2008)..................................................................................... 9, 22

**Statutes**

5 U.S.C. 552................................................................................................... 4
   § 552(a)(3)(A) .......................................................................................... 19
   § 552(a)(6)(A)(i). ...................................................................................... 18

5 U.S.C. § 552a ............................................................................................. 4

5 U.S.C. § 702 ............................................................................................. 21

5 U.S.C. § 704 ............................................................................................. 11

5 U.S.C. § 706(1) ........................................................................................ 11

**Regulations**

32 C.F.R. § 286.5(a)..................................................................................... 19

**Rules**

Federal Rule of Civil Procedure 65(b)(4) ...................................................... 1

**Executive Orders**

Executive Order No. 10,865, *Safeguarding Classified Information Within Industry*, 25 Fed. Reg. 1583 (Feb. 18, 1960)

§ 1............................................................................................................................... 13
§ 1(a)........................................................................................................................... 2
§ 3................................................................................................................................ 2
§ 3(6)........................................................................................................................... 2
§ 4........................................................................................................................... 3, 14
§ 4(a)........................................................................................................................... 2
§ 5(a)......................................................................................................................... 13
§ 6......................................................................................................................... 2, 14
§ 7............................................................................................................................. 22

Executive Order No. 12,968, *Access to Classified Information*, 60 Fed. Reg. 40,245 (Aug. 7, 1995)

preamble....................................................................................................................... 4
§ 1.1(e)......................................................................................................................... 5
§ 5.2(a)(2)............................................................................................................... 4, 16
§ 5.2(a)(3)............................................................................................................... 4, 16
§ 7.2(c)................................................................................................................... 5, 13
§ 7.2(e)................................................................................................................... 5, 14

**Constitutional Provisions**

U.S. Const. art. II, § 2, cl. 1 ...................................................................................... 1

**Other Authorities**

1 Admin. L. & Prac. § 4:22 (Charles H. Koch, Jr. & Richard Murphy eds., 3d ed. Feb. 2022 update).......................................................................................................................... 17

Directive 5220.6, *Procedures for the DoD Personnel Security Program* .................... 3, 12, 14-16

Manual 5200.02 *Procedures for the DoD Personnel Security Program* (Apr. 3, 2017).... 5, 14, 15

Pursuant to Federal Rule of Civil Procedure 65(b)(4), Defendants Department of Defense and Defense Counterintelligence and Security Agency (collectively, the "Department"), by and through undersigned counsel, respectfully submit this memorandum of points and authorities in support of their motion to dissolve this Court's temporary restraining order, ECF No. 7.[1] In short, Plaintiff David Steele lacks a likelihood of success on the merits and cannot show irreparable harm absent provisional relief as his administrative security revocation process is in progress, which will afford him due process.

## BACKGROUND

A brief overview of the legal framework governing adjudications of security clearance applications, Steele's application, and this case's procedural history follows.

## I.  <u>Legal Framework Governing the Adjudication of Security Clearance Applications</u>

The President has the "authority to classify and control access to information bearing on national security and to determine whether an individual is sufficiently trustworthy to occupy a position in the Executive Branch that will give that person access to such information." *Dep't of Navy v. Egan*, 484 U.S. 518, 527 (1988) (citing U.S. Const. art. II, § 2, cl. 1). "Since World War I, the Executive Branch has engaged in efforts to protect national security information by means of a classification system graded according to sensitivity." *Id.* "Presidents, in a series of Executive Orders, have sought to protect sensitive information and to ensure its proper classification throughout the Executive Branch by delegating this responsibility to the heads of agencies." *Id.* "[N]o one has a 'right' to a security clearance," and denials generally are unreviewable. *Id.* at 528.

---

[1]   The undersigned represents the ten unnamed John Doe defendants only to the extent that Steele purports to sue them in their official, rather than their individual, capacities. Apart from describing these individuals as "Federal Government Employees," Compl. at 1, ECF No. 1, Steele fails to offer any information that sheds light on his basis for suing them, explain the capacity in which he is suing them, or discuss them in his complaint's "Parties" section. *Id.* ¶¶ 2-3.

Today, an intricate web of Executive Orders ("EO"), regulations, and agency directives governs security clearance application adjudications. Discrete procedural frameworks control security clearance adjudications for federal personnel and private sector contractors.

### A.     Security Clearance Adjudication for Private Sector Contractors

Issued by President Dwight D. Eisenhower, Executive Order 10,865, *Safeguarding Classified Information Within Industry*, directs the Secretary of Defense and certain other specified agency heads to "by regulation, prescribe specific requirements, restrictions, and other safeguards as they consider necessary to protect . . . releases of classified information to or within industry." EO 10,865 § 1(a), 25 Fed. Reg. 1583, 1583 (Feb. 18, 1960). Executive Order 10,865 states that "authorization for access to a specific classification category may not be finally denied or revoked" until a contractor is given (1) "A written statement of the reasons why his access authorization may be denied or revoked," (2) "A reasonable opportunity to reply in writing under oath or affirmation to the statement of reasons," (3) "[A]n opportunity to appear personally before the head of the department concerned or his designee . . . for the purpose of supporting his eligibility for access authorization and to present evidence on his behalf," (4) "A reasonable time to prepare for that appearance," (5) "An opportunity to be represented by counsel," (6) "An opportunity to cross-examine persons either orally or through written interrogatories,"[2] and (7) "A written notice of the final decision in his case which, if adverse, shall specify whether the [agency] found for or against him with respect to each allegation in the statement of reasons." *Id.* § 3.

Executive Order 10,865 entitles a contractor to receive only limited information during a clearance adjudication. It lets the Secretary of Defense or other appropriate agency head issue

---

[2]     A contractor's opportunity for cross-examination may not encompass "matters not relating to the characterization in the statement of reasons of any organization or individual other than the applicant," along with certain additional limits. EO 10,865 §§ 3(6), 4(a), 25 Fed. Reg. at 1583.

"invitations and requests to appear and testify in order that the applicant may have the opportunity to cross-examine as provided by this order." EO 10,865 § 6, 25 Fed. Reg. at 1583. "So far as the national security permits, the head of the investigative agency involved shall cooperate with the Secretary . . . in identifying persons who have made statements adverse to the applicant and assist him in making them available for cross-examination." *Id.* If such persons are federal personnel, "the head of the department or agency concerned shall cooperate in making that person available for cross-examination." *Id.* In circumstances where "statements adverse to the applicant relating to a controverted issue . . . may be received and considered without" an opportunity for cross-examination, a contractor is entitled to a "summary of the information." *Id.* § 4. Beyond these limited procedures, Executive Order 10,865 does not entitle contractors to receive information.

Department of Defense Directive 5220.6, *Defense Industrial Personnel Security Clearance Review Program*, implements Executive Order 10,865, setting "policy, responsibilities, and procedures of the Defense Industrial Personnel Security Clearance Review Program." Ex. A, Dep't of Def. Dir. 5220.6 ("Directive 5220.6") (Jan. 2, 1992).[3] Under Directive 5220.6, an "unfavorable clearance decision shall not be made unless the applicant has been provided with a written [statement of reasons] that shall be as detailed and comprehensive as the national security permits," and entitles an applicant to "request a hearing." *Id.* § E3.1.3. "The applicant must submit a detailed written answer to the [statement of reasons] under oath or affirmation that shall admit or deny each listed allegation." *Id.* § E3.1.4. "A general denial or other similar answer is insufficient." *Id.* "To be entitled to a hearing, the applicant must specifically request a hearing in his or her answer." *Id.*

---

[3]    The Department originally issued Directive 5220.6 on August 12, 1985, then cancelled it and reissued it in updated form on January 2, 1992. Directive 5220.6 § 1.

"The answer must be received . . . within 20 days from receipt of the [statement of reasons]." *Id.* This deadline may be extended "only upon a showing of good cause." *Id.*

If neither the contractor nor the Department requests a hearing, an Administrative Judge shall decide the matter based on the written record. Directive 5220.6 § E3.1.7. The Department "shall provide the applicant with a copy of all relevant and material information that could be adduced at a hearing." *Id.* If either the contractor or Department requests a hearing, discovery "is limited to non-privileged documents and material subject to control by the [Defense Office of Hearings and Appeals]." *Id.* § E3.1.11 "As far in advance as practical, Department Counsel and the applicant shall serve one another with a copy of any pleading, proposed documentary evidence, or other written communication to be submitted to the Administrative Judge." *Id.* § E3.1.13.

### B.     Security Clearance Adjudication for Agency Personnel

Issued by President Bill Clinton, Executive Order 12,968, *Access to Classified Information*, "establishes a uniform Federal personnel security program for employees who will be considered for initial or continued access to classified information." EO 12,968 preamble, 60 Fed. Reg. 40,245, 40,245 (Aug. 7, 1995). Executive Order 12,968 states that applicants "who are determined to not meet the standards for access to classified information shall be" provided, "upon request and to the extent the documents would be provided if requested under the Freedom of Information Act [('FOIA')] (5 U.S.C. 552) or the Privacy Act ([5] U.S.C. 552a), as applicable, any documents, records, and reports upon which a denial or revocation is based." *Id.* § 5.2(a)(2). Applicants are also entitled to be "informed of their right . . . to request any documents, records, and reports . . . upon which a denial or revocation is based; and to request the entire investigative file, as permitted by the national security and other applicable law, which, if requested, shall be promptly provided prior to the time set for a written reply." *Id.* § 5.2(a)(3).

4

On its face, Executive Order 12,968 applies to both federal personnel and "industrial or commercial contractor[s]." EO 12,968 § 1.1(e). That said, Executive Order 12,968 expressly states that Executive Order 10,865 continues to govern security clearance application adjudications for contractors, and does not purport to displace Executive Order 10,865 in this respect. Specifically, it explains that "[n]o prior Executive orders are repealed by this order," and "[t]o the extent that this order is inconsistent with any provision of any prior Executive order," it "shall not diminish or otherwise affect . . . the denial and revocation procedures provided to individuals covered by Executive Order No. 10865, as amended." *Id.* § 7.2(c). Executive Order 12,968 specifies that it "is intended only to improve the internal management of the executive branch and is not intended to, and does not, create any right to administrative or judicial review, or any other right or benefit or trust responsibility, substantive or procedural, enforceable by a party against the United States, its agencies or instrumentalities, its officers or employees, or any other person." *Id.* § 7.2(e).

Department of Defense Manual 5200.02, *Procedures for the DoD Personnel Security Program*, "implements policy, assigns responsibilities, and provides procedures for the" Department's Personnel Security Program. Ex. B, Dep't of Def. Manual 5200.02 at 1 (Apr. 3, 2017). Given the above distinction, Manual 5200.02 "[p]rescribes procedures for administrative due process" only "for employees" of federal agencies. *Id.* It explains that "[a]dministrative due process for *contractor personnel* is governed by [Directive] 5220.6." *Id.* (emphasis in original).

## II.     Steele's Security Clearance Application

In July 2020, Steele applied for a security clearance to secure employment with Human Domain Solutions, LLC, which requires a "secret"-level security clearance. Compl. ¶¶ 5-6, ECF No. 1. On May 9, 2022, the Department's Consolidated Adjudications Facility (then known as Consolidated Adjustment Services) issued a statement of reasons "pursuant to Executive Order

10,865" and "Directive 5220.6, dated, January 2, 1992," explaining that it was "unable to find that it is clearly consistent with the national interest to grant you access to classified information" and would submit Steele's case to an Administrative Judge. Pl.'s Mot. Temporary Restraining Order & Preliminary Injunction ("Mot."), Ex. A, Statement of Reasons ("Statement") at 1, ECF No. 2-2.

The statement of reasons explained that "[c]riminal activity creates doubt about a person's judgment, reliability, and trustworthiness," and "[b]y its very nature, [ ] calls into question a person's ability or willingness to comply with laws, rules, and regulations." Statement at 1. It also explained that "[s]exual behavior that involves a criminal offense; reflects a lack of judgment or discretion; or may subject the individual to undue influence of coercion, exploitation, or duress," and "may raise questions about an individual's judgment, reliability, trustworthiness, and ability to protect classified or sensitive information." *Id.* at 2.

The statement of reasons noted that, in November 2001, Steele was "arrested and charged with felony Indecent Liberties with Child by Custodian," a charge that later "was nolle prossed." *Id.* In December 1998, Steele "pled guilty at an Article 15 hearing to Conduct Unbecoming an Officer and a Gentlem[a]n" and "Indecent Acts," in violation of Articles 133 and 134, respectively, of the Uniform Code of Military Justice. *Id.* Steele "received a punitive letter of reprimand and forfeiture of $2,000 pay per month for two months, all but $750 per month of which was suspended for six months." *Id.* In 1999, "a Board of Inquiry substantiated [his] misconduct and substandard performance of duty and recommended that [he] be discharged with a General under Honorable Conditions Discharge." *Id.* Steele was ultimately "involuntarily discharged from the Marines with a characterization of General under Honorable Conditions." *Id.*

The statement of reasons also noted that "[c]onduct involving questionable judgment, lack of candor, dishonesty, or unwillingness to comply with rules and regulations can raise questions

about an individual's reliability, trustworthiness, and ability to protect classified or sensitive information. Of special interest is any failure to cooperate or provide truthful and candid answers during national security investigative or adjudicative processes." Statement at 2. It stated that Steele had "falsified material facts on an Electronic Questionnaire for Investigations Processing" on August 3, 2020. *Id.* Section 22 of the questionnaire, styled "Police Record (EVER)," asked: "Other than those offenses already listed, have you EVER had the following happen to you? Have you EVER been charged with any felony offense? (Include those under the Uniform Code of Military Justice and non-military/civilian felony offenses)." *Id.* Steele answered "No," and thus, the statement of reasons said, "deliberately failed to disclose [this] information" about his felony charges. *Id.* Steele "also failed to disclose that in about May 1998, court-martial charges alleging rape, sodomy, conduct unbecoming an officer, and indecent acts were brought against you." *Id.*

On June 10, 2022, Steele requested an extension of his June 22, 2022, deadline to respond to the statement of reasons to August 21, 2022, which the Department granted. Compl. ¶ 9. On June 13, 2022, Steele filed a request under the FOIA and Privacy Act for "all records pertaining to Mr. Steele held by the Department of Defense." Mot., Ex. C, Request at 1. Steele described the set of records he sought as follows: (1) "All interagency and intra-agency correspondence pertaining to the above," (2) "All interagency and intra-agency records related to the individual," (3) "All investigation and standard forms pertaining to the above," and (4) "Complete copy of investigative interview with Department of Defense investigator." *Id.*; Compl. ¶ 10.

On August 12, 2022, having not received the requested records, Steele sought an extension of his response deadline to October 20, 2022. Compl. ¶ 14. The Department granted an extension to September 21, 2022. *Id.* ¶ 15. On September 14, 2022, Steele requested a second extension of his response deadline, to October 21, 2022, which the Department granted. *Id.* ¶ 19. On October

14, 2022, Steele sought a third extension of his response deadline, to November 21, 2022, which

the Department granted. *Id.* ¶¶ 22-23. On November 14, 2022, Steele requested a fourth extension

of his response deadline, to December 21, 2022. *Id.* ¶ 29. The Department granted an extension to

November 26, 2022, and then another extension to December 1, 2022, but denied Steele's request

for an extension to December 21, 2022. *Id.* ¶ 29(c).

### III.    <u>Procedural Background</u>

Steele filed this action on November 30, 2022, raising claims under FOIA, the Privacy Act,

the Administrative Procedure Act ("APA"), and the Fifth Amendment Due Process Clause. Compl.

¶¶ 34-74. That same day, he moved for a temporary restraining order and preliminary injunction,

seeking an indefinite extension of his deadline to respond to the statement of reasons. *See* Mot.

This Court conducted an *ex parte* telephonic hearing the next day. Min. Entry (Dec. 1, 2022).[4]

Later that day, the Court granted a temporary restraining order. ECF No. 7. The Court

concluded that Steele was "likely to succeed on at least some of his legal claims," citing Executive

Order 12,968 for the proposition that, "[u]pon an applicant's request, the Government must

provide any documents and records upon which the denial of a security clearance is based . . .

before requiring an applicant to respond to a Statement of Reasons." *Id.* at 2. The Court further

concluded that if Steele's records request was proper, "the Government may be acting unlawfully

by requiring a response without furnishing Steele the records to which he is arguably entitled." *Id.*

The Court further concluded that Steele had demonstrated irreparable harm. Temporary

Restraining Order at 2. It determined that Steele likely will lose his job if the Department denies

him a security clearance, "as will likely occur if he doesn't respond to the Government's Statement

---

[4]     The government did not participate in this hearing because it was not aware of this lawsuit's existence due to the manner in which Steele attempted to contact the U.S. Attorney's Office. *See generally* Notice of Non-Compliance, ECF No. 5.

of Reasons by the December 1, 2022 deadline," because his job requires a clearance. *Id.* Finally, the Court concluded that the balance of equities and public interest favored a temporary restraining order because such relief would simply "preserve the status quo for a short period of time to allow consideration of [Steele's] claims," which the Court determined was "consistent with the public interest and will impose no serious burden on the Government." *Id.* The Court suspended Steele's deadline to respond to the statement of reasons to December 7, 2022 at 5 PM, and directed the government to file any motion to vacate the temporary restraining order, or otherwise respond to that order, by December 5, 2022 at 5 PM. *Id.* at 2-3.

## LEGAL STANDARD

"A temporary restraining order is an extraordinary remedy, one that should be granted only when the moving party, by a clear showing, carries the burden of persuasion," *Nat'l Lawyers Guild v. Exec. Off. of Immigr. Rev.*, 456 F. Supp. 3d 16, 25 (D.D.C. 2020) (cleaned up). To obtain such an order, a plaintiff must show (1) "that it is likely to succeed on the merits; (2) that it is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in its favor; and (4) that the proposed relief is in the public interest." *Id.*

"For many years, the D.C. Circuit evaluated these factors on a 'sliding scale.'" *Friends of Animals v. Bureau of Land Mgmt.*, 548 F. Supp. 3d 39, 54 (D.D.C. 2021) (citing, e.g., *Davenport v. Int'l Bhd. of Teamsters*, 166 F.3d 356, 360–61 (D.C. Cir. 1999)). "It has read the Supreme Court's decision in *Winter v. Natural Resources Defense Council, Inc.*, [555 U.S. 7, 20-24 (2008),] however, 'at least to suggest if not to hold' that plaintiffs face 'a more demanding burden' under which 'a likelihood of success is an independent, freestanding requirement for a preliminary injunction.'" *Friends of Animals*, 548 F. Supp. 3d at 54 (quoting *Sherley v. Sebelius*, 644 F.3d 388, 392–93 (D.C. Cir. 2011) (internal quotation marks omitted)). That said, "[t]his issue remains the subject of some uncertainty in this circuit." *Friends of Animals*, 548 F. Supp. 3d at 54 (collecting

citations). "But, notwithstanding this uncertainty, it is clear that the plaintiff's likelihood of success on the merits is a 'key issue and often the dispositive one' at the preliminary injunction stage." *Friends of Animals*, 548 F. Supp. 3d at 54 (alterations omitted) (quoting *Greater New Orleans Fair Hous. Action Ctr. v. Dep't of Hous. & Urb. Dev.*, 639 F.3d 1078, 1083 (D.C. Cir. 2011)).

## ARGUMENT

Steele cannot establish any of the four factors necessary to obtain a temporary restraining order. First, he cannot show a likelihood of success on the merits. Steele's APA claim fails because there is no final agency action, given that his clearance adjudication proceedings are ongoing. In any event, Steele believes that Executive Order 12,968 entitles him to "all records pertaining to [him] held by the Department," Request at 1, before his response to the statement of reasons is due. But Executive Order 12,968 does not apply here at all. Rather, Executive Order 10,865 supplies the governing framework, and neither it nor Directive 5220.6—Executive Order 10,865's implementing directive—entitles Steele to any information at all before responding to the statement of reasons. Even were Executive Order 12,968 to apply, it creates no enforceable rights. And even if it created enforceable rights, it would not entitle Steele to the full scope of the information he seeks. Steele's due process claim fails for the same reasons and others, as Steele has no constitutionally protectable interest in his security clearance, and any procedural defects have not deprived him of the baseline procedural protections afforded by the Constitution. Further, neither FOIA nor the Privacy Act entitle him to the records he seeks on the timetable demanded— that he seeks to use the records in his clearance adjudication is irrelevant. Regardless, his records request is partially deficient because it fails to reasonably describe the records sought, and Steele will have the ability to seek relevant information in the administrative process.

Nor can Steele establish any of the remaining three factors to obtain a temporary restraining order. He cannot show that such an order is needed to prevent irreparable injury, as he fails to offer

any non-speculative explanation as to how the records he seeks would rebut, explain, extenuate, or mitigate the concerns regarding his fitness for a clearance, or that he would not receive the relevant ones in the course of the administrative process. Nor can he show a favorable balance of equities, or that the public interest favors a temporary restraining order. Because Steele cannot meet the high burden to show that such an order is warranted, this Court should vacate its order.

## I.      Steele Cannot Establish a Likelihood of Success on the Merits

Steele raises causes of action under the APA, Due Process Clause, FOIA, and Privacy Act, but fails to show that he is likely to succeed on any of these four claims.

### A.      Steele's Administrative Procedure Act Claim is Meritless

Steele's APA claim fails for several reasons. There is no final agency action to challenge. Further, Executive Order 10,865, not Executive Order 12,968, applies to Steele's security clearance adjudication. Even if Executive Order 12,968 did apply, it creates no enforceable rights. And even if it did, it would not entitle Steele to the full scope of the information he seeks.

#### 1.      There is no final agency action

The APA allows a court to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). As an initial matter, Steele's APA claim fails because there is no "final agency action." *Id.* § 704. Rather, administrative adjudication of Steele's security clearance application is ongoing. *See* Statement at 1 (noting that Steele's case was referred to Administrative Judge); *Marcum v. Salazar*, 694 F.3d 123, 128 (D.C. Cir. 2012) ("Ongoing agency review renders an agency order non-final and judicial review premature"); *Action on Smoking & Health v. Dep't of Lab.*, 28 F.3d 162, 165 (D.C. Cir. 1994) ("Agency action is final when it imposes an obligation, denies a right, or fixes some legal relationship" (internal quotation marks omitted)); *see also Int'l Telecard Assoc., Inc. v. FCC*, 166 F.3d 387, 388 (D.C. Cir. 1999) ("a petition for review filed after

a bureau decision but before resolution by the full Commission is subject to dismissal as incurably premature"). For this reason alone, Steele cannot show a likelihood of success on his APA claim. That is, his administrative security revocation process remains ongoing. Indeed, it is at its infancy.

An agency's statement of reasons—the document giving rise to this action—is in essence a charging document, providing the individual with a description of the grounds on which the agency proposes to deny or halt their security clearance. Directive 5220.6 §§ E3.1.2, E3.1.3. In response to a statement of reasons, a contractor "answers" the allegations and indicates whether he wishes to proceed with a hearing or an adjudication on the papers. *Id.* § E3.1.4. After that filing, the administrative process continues based on the contractor's choice. *Id.* §§ E3.1.7, E3.1.8. If the contractor elects to receive an adjudication on the papers, the agency's counsel provides him "with a copy of all relevant and material information that could be adduced at a hearing" and, in turn, the contractor is afforded a response to that information. *Id.* § E3.1.7. If he elects to proceed with a hearing, he is provided additional procedure, including discovery as overseen and permitted by an Administrative Judge and even summaries of classified information as national security permits. *Id.* §§ E3.1.8–E3.1.27. If the contractor is dissatisfied with the Administrative Judge's ruling, he can pursue an administrative appeal.

As this summary of the Directive 5220.6's procedure illustrates, Steele's suit is premature. Put the parlance of a civil action, he in essence asks this Court to conclude that he need not answer a complaint until he receives complete discovery. That is of course not the procedure of this Court, and as Directive 5220.6 makes clear, it is not the procedure governing the administrative process applicable to Steele's clearance adjudication. Indeed, the rationale for the APA's requirement that a plaintiff be harmed by a final agency action is on full display in this case. Steele invites this

Court to augment the Department's well-established procedures in this area before they have been applied to Steele's administrative claim. The Court should decline Steele's invitation.

2.     Executive Order 10,865 governs Steele's clearance adjudication

Regardless, the notion that Steele is entitled to the records he seeks before responding to the statement of reasons rests on the mistaken premise that Executive Order 12,968 creates a right to the records. But Executive Order 12,968 does not apply here at all. Because Steele is a contractor, not a federal employee, Executive Order 10,865, which governs the adjudication of security clearance applications for contractors, applies instead. *See* EO 10,865 ("Safeguarding classified information within industry"); *id.* §§ 1, 5(a), 25 Fed. Reg. at 1583 (Executive Order 10,865 applies to "industry"); *see also United States v. Robel*, 389 U.S. 258, 268 n.19 (1967) (Executive Order 10,865 "establish[s] detailed procedures for screening those working in private industry who, because of their jobs, must have access to classified defense information"); *Palmieri v. United States*, 896 F.3d 579, 583 (D.C. Cir. 2018) (Executive Order 10,865 concerns "contractor[s]"); *Gayer v. Schlesinger*, 490 F.2d 740, 749 n.18 (D.C. Cir. 1973), *amended*, 494 F.2d 1135 (D.C. Cir. 1974) ("[g]overnment employment in general is not involved" under Executive Order 10,865); *Adams v. Laird*, 420 F.2d 230, 232 (D.C. Cir. 1969) (Executive Order 10,865 governs "safeguarding of classified information within industry").

Executive Order 12,968 by its own terms does not "affect . . . the denial and revocation procedures provided to individuals covered by Executive Order No. 10865." EO 12,968 § 7.2(c), 60 Fed. Reg. at 40,254. To overlay Executive Order 12,968's procedural requirements on those that Executive Order 10,865 provides would "affect" Executive Order 10,865's denial and revocation procedures in any reasonable sense of the term. *Id.*; *see also DiBacco v. Dep't of the Army*, 234 F. Supp. 3d 255, 273 (D.D.C. 2017) (interpreting Executive Order in light of its "plain

language"). Executive Order 12,968 thus does not provide any contractor a right to information beyond that which Executive Order 10,865 provides.

Reinforcing this conclusion is the fact that the Department has long construed Executive Order Nos. 10,865 and 12,968 to create separate and distinct frameworks for adjudicating security clearance applications by federal employees and contractors and has established discrete procedural frameworks for these contexts. *See* Directive 5220.6 at 1; Manual 5200.02 at 1; *see also Changji Esquel Textile Co. v. Raimondo*, 40 F.4th 716, 723 (D.C. Cir. 2022) ("we defer to Executive Branch judgments on how best to protect national security"). Indeed, the statement of reasons noted that the Department reviewed Steele's clearance application "pursuant to Executive Order 10865" and "Directive 5220.6." Statement at 1.

Executive Order 12,968 thus does not entitle Steele to any information beyond that which Executive Order 10,865 offers. And there is no dispute that Executive Order 10,865 does not entitle Steele to the information he seeks, much less before responding to the statement of reasons. *See* EO 10,865 §§ 4, 6, 25 Fed. Reg. at 1583 (creating only a limited right to receive information in clearance adjudications, not including all the information Steele seeks, and creating right to information before responding to statement of reasons). Because Executive Order 10,865 does not entitle Steele to the relief he seeks, he cannot show likely success on the merits.

3.    Even if Executive Order 12,968 applied, it creates no enforceable rights

Even were Executive Order 12,968 to apply, it would not entitle Steele to the information that he seeks. That is because it expressly creates no enforceable rights—only internal procedural rules for agencies' own benefit. *See* EO 12,968 § 7.2(e), 60 Fed. Reg. at 40,254. Executive Order 12,968 thus cannot support a justiciable claim. *See Air Transp. Ass'n of Am. v. FAA*, 169 F.3d 1, 8 (D.C. Cir. 1999) (Executive Order that is "'intended only to improve the internal management

14

of the executive branch and does not create any right . . . enforceable against the United States' . . . is not subject to judicial review"); *Meyer v. Bush*, 981 F.2d 1288, 1297 n.8 (D.C. Cir. 1993) ("The Executive Order carefully stated that its purpose was only for internal management and that it created no private rights. As such, it is doubtful that it had any legal significance. An Executive Order devoted solely to the internal management of the executive branch—and one which does not create any private rights—is not, for instance, subject to judicial review."); *Helicopter Ass'n Intern., Inc. v. FAA*, 722 F.3d 430, 439 (D.C. Cir. 2013) ("nor is an agency's failure to comply with [Executive Order 12,866] subject to judicial review"); *Envt'l Def. Fund, Inc. v. Massey*, 986 F.2d 528, 530 (D.C. Cir. 1993) ("The Executive Order explicitly states that the requirements contained therein are 'solely for the purpose of establishing internal procedures for Federal agencies . . . and nothing in [it] shall be construed to create a cause of action.'"); *see also Lopez v. FAA*, 318 F.3d 242, 247 (D.C. Cir. 2003) ("this court has been careful to distinguish between procedural rules benefitting the agency [ ] and procedural rules benefitting the party otherwise left unprotected by agency rules [ ] as well as cases in which the agency has failed to exercise discretion required by its regulations").

A such, if Steele were permitted to invoke Executive Order 12,968, he would need to rely not on the Executive Order itself, but on Manual 5200.02, the administrative guidance the Department promulgated to enforce Executive Order 12,968. But Manual 5200.02 expressly explains that it does not govern the administrative process for "contractor personnel." Manual 5200.02 at 1. Rather, Manual 5200.02 explains that Directive 5220.6, which implements Executive Order 10,865, governs in the contractor context. *Id.* And as noted above, Directive 5220.6, for its part, does not entitle Steele to the relief he seeks, either. Mimicking the procedure for civil actions in this Court, Directive 5220.6 entitles him to certain information after responding to the statement

of reasons, and prior to an Administrative Judge hearing. Directive 5220.6 § E3.1.13; *see also id.* §§ E3.1.8-E3.1.12; *Statewide Bonding, Inc. v. Dep't of Homeland Sec.*, 980 F.3d 109, 117 (D.C. Cir. 2020) ("A basic principle of . . . regulatory interpretation is that the . . . regulation should be read in context.").

4.    <u>The information Steele seeks exceeds Executive Order 12,968's scope</u>

Finally, even were Executive Order 12,968 read to create rights that Steele may enforce, the information that he seeks far exceeds its scope. The records available under Executive Order 12,968 are limited to "documents, records, and reports upon which a denial or revocation is based." EO 12,968 § 5.2(a)(2), 60 Fed. Reg. at 40,252; *see also id.* § 5.2(a)(3) (same). But Steele seeks a far broader set of records—"all records pertaining to [him] held by the Department," including "[a]ll interagency and intra-agency correspondence pertaining to the above," "[a]ll interagency and intra-agency records related to [him]," "[a]ll investigation and standard forms pertaining to the above," and a "[c]omplete copy of investigative interview with [the Department] investigator." Request at 1. Steele fails to show, nor is there reason to believe, that the Department relied on "all records pertaining to him," *id.*, in making its decision. Even if Executive Order 12,968 entitled Steele to information, then, it would not entitle him to the breadth of information he seeks.

**B.    Steele's Due Process Claim is Meritless**

Because the only due process violation that Steele alleges in his motion is the Department's failure to follow its procedures, Mot. at 9, his procedural due process claim fails for the same reason his APA claim fails. Moreover, Steele's attempt to attach constitutional import to the Defense Department's security revocation procedures fails for other reasons.

*First*, an agency's failure to follow its procedures does not necessarily constitute a due process violation. *See Crosby-Bey v. District of Columbia*, 786 F.2d 1182, 1186 (D.C. Cir. 1986)

16

(the requirement "that federal agencies must follow their own regulations" is not of constitutional stature); *Bd. of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 92 n.8 (1978) (agency's failure to follow own rules may violate "principles of federal administrative law rather than of constitutional law"); *Vitarelli v. Seaton*, 359 U.S. 535, 546-47 (1959) (Frankfurter, J., concurring) (characterizing requirement that agency follow its own rules as "judicially evolved rule of administrative law"); *Vanover v. Hantman*, 77 F. Supp. 2d 91, 103 (D.D.C. 1999), *aff'd*, 38 F. App'x 4 (D.C. Cir. 2002) ("even where a protected employment interest is at stake, an agency does not violate due process merely because of a failure to follow its own procedures in the discharge proceeding"); 1 Admin. L. & Prac. § 4:22 (Charles H. Koch, Jr. & Richard Murphy eds. 3d ed. Feb. 2022 update) ("an agency's failure to follow a rule is not a due process violation."). That is, while an agency's material departure from its established processes without justification may provide a basis for an APA claim, it does not give rise to one under the Constitution unless that departure deprives an individual of the minimal procedural protections the Constitution ensures (e.g., notice and an opportunity to be heard). Here, Steele does not complain that he has not been informed of the bases for the revocation of his clearance nor that Directive 5220.6's procedures fail to afford him an adequate opportunity to be heard. As such, his constitutional claim fails.

*Second*, Steele lacks a constitutionally protected interest in his security clearance. "To sustain a procedural due process claim, a plaintiff must first demonstrate the existence of a protected liberty or property interest." *McCormick v. District of Columbia*, 752 F.3d 980, 987 (D.C. Cir. 2014). But an individual "does not have a liberty or property interest in his security clearance." *Palmieri v. United States*, 72 F. Supp. 3d 191, 206 (D.D.C. 2014); *see also Egan*, 484 U.S. at 528 ("It should be obvious that no one has a 'right' to a security clearance."); *Gill v. Dep't of Just.*, 875 F.3d 677, 681 (D.C. Cir. 2017) ("We can just as quickly resolve Gill's claim that the

FBI's revocation of his security clearance violated his rights under the due process clause."); *U.S. Info. Agency v. Krc*, 905 F.2d 389, 399 (D.C. Cir. 1990) ("no independent property right attaches to the security clearance"). As such, Steele's failure to receive a "security clearance cannot serve as a predicate liberty or property interest." *Palmieri*, 72 F. Supp. 3d at 206 (collecting cases); *see also Dorfmont v. Brown*, 913 F.2d 1399, 1403 (9th Cir. 1990) ("there is a strong presumption against the issuance or continuation of a security clearance").

        *Third*, Steele also cannot base a constitutional claim on the consequential effects of being deprived a security clearance—e.g., the loss of employment. This is because "the right 'to earn a living'"—a potential liberty interest—"does not extend to jobs requiring a security clearance." *Gill v. Dep't of Just.*, Civ. A. No. 15-0824 (RMC), 2016 WL 3982450, at *6 (D.D.C. July 22, 2016) (citing *Palmieri*, 72 F. Supp. 3d at 206-07, and *Dofrmont*, 913 F.2d at 1403). In other words, "[i]f there is no protected interest in a security clearance, there is no liberty interest in employment requiring such clearance." *Dorfmont*, 913 F.2d at 1403.

## C.    Steele's FOIA and Privacy Act Claims are Meritless

        Steele's FOIA and the Privacy Act claims fail for two reasons. *First*, neither FOIA nor the Privacy Act establishes a specific deadline by which an agency must furnish records to a requester. FOIA requires an agency to "determine within 20 [business] days . . . whether to comply with such request," and "notify" the requester of the determination, the reasons for that determination, and the requester's administrative appeal rights. 5 U.S.C. § 552(a)(6)(A)(i). But it does not entitle a requester to the records themselves within 20 business days, nor does an agency's failure to furnish records within that timeframe require the records' immediate release. *See Citizens for Resp. & Ethics in Wash. v. FEC*, 711 F.3d 180, 189 (D.C. Cir. 2013) ("If the agency does not adhere to FOIA's explicit timelines, the 'penalty' is that the agency cannot rely on the administrative

exhaustion requirement to keep cases from getting into court."). As then-Judge Ketanji Brown Jackson has explained, "the impact of blowing the 20–day deadline relates *only to the requester's ability to get into court*." *Elec. Priv. Info. Ctr. v. Dep't of Just.*, 15 F. Supp. 3d 32, 41 (D.D.C. 2014) (emphasis in original); *see also id.* (agency's "failure to adhere to the 20–day deadline" does not "violate[ ] FOIA in a manner that entitles [a requester] to a court order granting it immediate access to the requested records. This is because . . . an agency's response to a FOIA request generally involves two steps, only one of which implicates the 20–day statutory timeframe.").

Nothing about the fact that Steele seeks the records at issue for use in his security clearance adjudication changes this analysis. There is no crosslink between FOIA or the Privacy Act, on the one hand, and Executive Orders 10,865 or Directive 5220.6, on the other hand, that requires an agency to stay sensitive clearance determinations while a contractor requests records or litigates a FOIA or Privacy Act lawsuit. To the contrary, FOIA is a device for the public to obtain information about the government, not a discovery device for administrative proceedings. *See Williams & Connolly v. SEC*, 662 F.3d 1240, 1245 (D.C. Cir. 2011) ("FOIA is neither a substitute for criminal discovery, nor an appropriate means to vindicate discovery abuses" (internal citation omitted)); *Baldrige v. Shapiro*, 455 U.S. 345, 360 n.14 (1982) ("The primary purpose of the FOIA was not to benefit private litigants or to serve as a substitute for civil discovery.").

*Second*, Steele's records request mostly fails to reasonably describe the records that Steele seeks. *See* 5 U.S.C. § 552(a)(3)(A) (a FOIA request is proper only if it "reasonably describes [the] records" sought); 32 C.F.R. § 286.5(a) (Privacy Act "[r]equesters must reasonably describe the records sought"). When a request seeks records that expressly "mention" or "reference" a given topic, all responsive records "could probably be found with a simple keyword search across agency databases." *Am. Ctr. for L. & Just. v. Dep't of Homeland Sec.*, 573 F. Supp. 3d 78, 85 (D.D.C.

19

2021). But the terms "pertain" or "relate to," in contrast, are indeterminate enough to "sweep in any communication even remotely related to the" topic at hand," and thus do not "allow the agency to determine precisely what records are being requested." *Id.* (internal quotation marks omitted).

Steele's records request sought various categories of records "pertaining to" or "related to" certain topics. Request at 1. Such broad and indeterminately phrased requests fail to reasonably describe the records sought. *See, e.g.*, *CNN, Inc. v. FBI*, 271 F. Supp. 3d 108, 112 (D.D.C. 2017) ("[T]he language 'relate in any way to' certain [records is] too vague"); *Shapiro v. CIA*, 170 F. Supp. 3d 147, 155 (D.D.C. 2016) ("there is a difference in kind between requests for documents that 'mention' or 'reference' a specified person or topic and those seeking records 'pertaining to,' 'relating to,' or 'concerning' the same"); *Sack v. CIA*, 53 F. Supp. 3d 154, 164-65 (D.D.C. 2014) ("Th[e] phrase ['pertain'] is difficult to define because a record may pertain to something without specifically mentioning it" (cleaned up)); *Freedom Watch, Inc. v. Dep't of State*, 925 F. Supp. 2d 55, 61 (D.D.C. 2013) (the term "relate to" is "overbroad since life, like law, is a seamless web, and all documents relate to all others in some remote fashion" (internal quotation marks omitted)).

The only part of Steele's request that even arguably is not deficient is the portion seeking a "[c]omplete copy of investigative interview with Department of Defense investigator." Request at 1. But he fails to explain how Directive 5220.6's discovery provisions are inadequate to secure this and other information relevant to his clearance adjudication. Instead, he invites this Court to prejudge an administrative process that has yet to occur. The Court should decline this invitation.[5]

---

[5]    Beyond injunctive relief, Steele's complaint seeks "compensatory and punitive damages against Defendants in the amount of $10,000,000.00 (TEN MILLION DOLLARS)[.]") Compl. at 14. This prayer for relief is patently frivolous, as the United States has not waived its sovereign immunity for money damages under the APA, FOIA, access claims under the Privacy Act, or the Constitution. *See, e.g., Gonzalez-Lora v. Dep't of Just.*, 169 F. Supp. 3d 46, 51 (D.D.C. 2016) ("Nor can a plaintiff obtain monetary damages for an alleged violation of the FOIA, because the sole remedy available to a requester under the FOIA is injunctive relief.") (internal quotation marks

## II.    **Steele Fails to Show that the Relief Requested is Needed to Prevent Irreparable Injury**

Nor can Steele establish that a temporary restraining order will prevent irreparable injury. He argues that clearance denial will cost him his job, ruin his career, and harm his reputation. Mot. at 12. But to obtain a temporary restraining order, it is not enough to show that a movant will suffer irreparable injury absent such an order. A movant must also show that such order would actually prevent that injury from occurring. *See Elec. Privacy Info. Ctr. v. Dep't of Com.*, 356 F. Supp. 3d 85, 96 (D.D.C. 2019) ("even assuming this harm is irreparable, it will not be redressed by the relief requested"); *Sierra Club v. Dep't of Energy*, 825 F. Supp. 2d 142, 153 (D.D.C. 2011) ("It would make little sense for a court to conclude that a plaintiff has shown irreparable harm when the relief sought would not actually remedy that harm. . . . it is perhaps more accurate to phrase the question . . . as whether the plaintiff will suffer irreparable harm 'but for' the issuance of an injunction.").

Each theory of irreparable harm that Steele offers presupposes that he will in fact be able— or at least is reasonably likely—to obtain a clearance so long as he gets the records he seeks before his response to the statement of reasons is due. But Steele offers no reason to think that. He fails to explain how not having the requested information now will have adverse results when he can seek relevant information during discovery in the administrative process. He also fails to explain how these records would rebut, explain, extenuate, or mitigate concerns about granting him a clearance. Indeed, any claim that the records Steele seeks would enable him to obtain a security clearance, and thus prevent irreparable harm, is wholly speculative—especially as the process the Department designed in response to Executive Order 10,865 and codified at Directive 5220.6 is

---

and alterations omitted); *Swecker v. FERC*, Civ. A. No. 21-1590 (RCL), 2022 WL 4534944, at *3 (D.D.C. Sept. 28, 2022) ("The APA only waives sovereign immunity for actions 'seeking relief other than money damages.'" (citing 5 U.S.C. § 702); *Benoit v. Dep't of Agric.*, 608 F.3d 17, 20 (D.C. Cir. 2010) ("suits for damages against the United States under the Civil Rights Act, the APA, and the Constitution are barred by sovereign immunity").

still in its infancy. *See Biovail Corp. v. FDA*, 448 F. Supp. 2d 154, 7 (D.D.C. 2006) ("Although the plaintiff demonstrates some potential for irreparable injury, the plaintiff's showing of injury is inadequate to justify the extraordinary relief of a [temporary restraining order]"); *Al-Anazi v. Bush*, 370 F. Supp. 2d 188, 16 (D.D.C. 2005) ("The harm must be concrete and immediate to warrant extraordinary injunctive relief, and vague or speculative injury will not suffice."); *cf. Winter*, 555 U.S. at 22 ("Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.").

Moreover, even if Steele's speculation turns out to be true and the administrative process results in a final adjudication revoking his security clearance, Steele's fear of reputational harm from the revocation provides no basis for provisional relief. "A clearance does not equate with passing judgment upon an individual's character." *Egan*, 484 U.S. at 528. "Instead, it is only an attempt to predict his possible future behavior and to assess whether, under compulsion of circumstances or for other reasons, he might compromise sensitive information." *Id.* Moreover, the notion "that the government's confidential and unpublished denial of security clearance" will become public knowledge is "doubtful"—except to the extent that Steele himself reveals it—and "to be denied [a security clearance] on unspecified grounds in no way implies disloyalty or any other repugnant characteristic." *Molerio v. FBI*, 749 F.2d 815, 824 (D.C. Cir. 1984); *see also id.* ("the mere fact that one has relatives in a hostile country may be considered a basis for denial"); EO 10,865 § 7, 25 Fed. Reg. at 1584 ("Any determination under this order adverse to an applicant shall be a determination in terms of the national interest and shall in no sense be a determination as to the loyalty of the applicant concerned.").

**III.** <u>**Steele Fails to Show a Favorable Balance of Equities**</u>

Steele likewise fails to show a favorable balance of equities. The wholly speculative injury that he asserts does not outweigh the Department's interest in avoiding administrative delay and reaching a final decision in the matter of Steele's security clearance application. *See JEM Broad. Co. v. FCC*, 22 F.3d 320, 325 (D.C. Cir. 1994) ("We place a high value on finality in administrative processes"). That interest is all the weightier in the national security context. *See Egan*, 484 U.S. at 529 ("unless Congress specifically has provided otherwise, courts traditionally have been reluctant to intrude upon the authority of the Executive in military and national security affairs").

**IV.** <u>**Steele Fails to Show that the Public Interest Merits a Temporary Restraining Order**</u>

Finally, Steele fails to establish that the public interest warrants a temporary restraining order. Steele's "public interest" argument is essentially derivative of his arguments on the merits, Mot. at 13-14, which each fail for the reasons explained above.

**CONCLUSION**

This Court should dissolve the temporary restraining order.

Dated: December 5, 2022

Respectfully submitted,

MATTHEW M. GRAVES
D.C. Bar No. 481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

By: /s/ Bradley G. Silverman
BRADLEY G. SILVERMAN
D.C. Bar No. 1531664
Assistant United States Attorney
601 D Street NW
Washington, DC 20530
(202) 252-2575

*Attorneys for the United States of America*