UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DAVID STEELE,<br><br>*Plaintiff,*<br><br>v.<br><br>DEPARTMENT OF DEFENSE, et al.<br><br>*Defendants*. | Civil Action No. 22-3604 (CJN) |

**REPLY IN SUPPORT OF MOTION TO**
**DISSOLVE TEMPORARY RESTRAINING ORDER**

Pursuant to Federal Rule of Civil Procedure 65(b)(4), Defendants Department of Defense and Defense Counterintelligence and Security Agency (collectively, the "Department"), by and through the undersigned counsel, respectfully reply in support of their motion to dissolve this Court's temporary restraining order, ECF No. 8.

**ARGUMENT**

As the Department explained in its motion, Steele cannot establish any of the four factors necessary to obtain a temporary restraining order.

**I.      Steele Cannot Establish a Likelihood of Success on the Merits**

**A.      Steele's Administrative Procedure Act Claim is Meritless**

As an initial matter, Resp. at 2, the Department does not argue that *Department of Navy v. Egan*, 484 U.S. 518 (1988), forecloses all review over claims premised on a security clearance decision. Instead, the Department explained that Steele's APA claim fails because there is no final agency action. Steele insists that the Department's "establishment of [a] due date" for his response to the statement of reasons "*was the final agency action*." Resp. at 17, ECF No. 10. But "[i]t is

well-settled that interlocutory agency decisions are not final agency actions within the meaning of the APA." *Jicarilla Apache Nation v. Dep't of Interior*, 648 F. Supp. 2d 140, 10 (D.D.C. 2009); *see also Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (to be final, "the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature" (cleaned up)).

Steele takes issue with the Department's explanation that Executive Order 10,865 rather than Executive Order 12,968 provides the framework for his clearance adjudication, but the basis of his disagreement is hard to understand.[1] In his response, he cites Executive Order 13,467, but he did not invoke it in his complaint or motion, ECF Nos. 1, 2, so cannot rely on it as grounds for a temporary restraining order. *See Larsen v. Dep't of Navy*, 525 F.3d 1, 5 (D.C. Cir. 2008) (declining to "read[ ] into plaintiffs' complaint an argument not adequately presented."); *Taitz v. Obama*, 754 F. Supp. 2d 57, 7 (D.D.C. 2010) ("the Court will not consider a legal argument that plaintiff could have raised in her complaint."); *Berger v. Iron Workers Reinforced Rodmen*, 170 F.3d 1111, 1142 (D.C. Cir. 1999) ("We routinely and for good reason refuse to consider contentions not raised in a party's briefs.").

Regardless, Steele's invocation of Executive Order 13,467 fails on the merits. As Steele acknowledges, Executive Order 13,467 does not "affect the denial and revocation procedures provided to individuals covered by Executive Order 10,865." EO 13,467 § 3(a)(ii), 73 Fed. Reg. 38,103, 38,107 (issued June 30, 2008, published in Fed. Reg. July 2, 2008). Thus, like Executive Order 12,968, Executive Order 13,437 does not augment Executive Order 10,865's procedures. Mot. Dissolve at 13-14. Steele argues that Executive Order 10,865 provides him only a "baseline"

---

[1] Steele's claim that the Department overlooks that Executive Order 12,968 defines the term "Employee" to include "an industrial or commercial contractor," Resp. at 6 (citing EO 12,968 § 1.1(e), 60 Fed. Reg. at 40,245), is incorrect. *See* Mot. at 5 (citing EO 12,968 § 1.1(e)).

of procedural protection, which Executive Orders 12,968 and 13,467 build upon, rather than a "ceiling." Resp. at 4, 12. But that is contrary to Executive Order 13,467's plain text, which states that it shall neither "diminish *or otherwise affect*" Executive Order 10,865's procedures, EO 13,467 § 3(a)(ii), 73 Fed. Reg. at 38,107 (emphasis added); *see also Affect*, Merriam-Webster's Dictionary, https://www.merriam-webster.com/dictionary/affect ("to produce an effect upon (someone or something)"). By using both the terms "diminish" and "otherwise affect," Executive Order 13,467 makes clear that it neither reduces nor augments Executive Order 10,865's procedures. Steele's interpretation, in contract, essentially would read the term "otherwise affect" out of Executive Order 13,467 entirely, leaving only the term "diminish." *See Petit v. Dep't of Educ.*, 675 F.3d 769, 793 (D.C. Cir. 2012) ("judges should hesitate to treat words in a regulation or statute as mere surplusage—words of no consequence"). Indeed, Steele acknowledges that he asks this Court to construe these terms identically, Resp. at 7-8, an invitation it should decline for the reasons above.

Moreover, Executive Order 13,467, like Executive Order 12,968, does not create enforceable rights, and thus cannot support a justiciable claim. *See* EO 13,467 § 3(i), 73 Fed. Reg. at 38,108 ("This order is intended only to improve the internal management of the executive branch and is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity, by any party against the United States, its agencies, instrumentalities, or entities, its officers or employees, or any other person."); Mot. Dissolve at 14-15 (citing cases involving Executive Orders using similar language). Steele concedes that Executive Orders 12,968 and 13,467 create no enforceable rights, yet nonetheless argues that they create procedural protections that he is due. Resp. at 14. But as the cases the Department has cited explain, an Executive Order containing rights-disclaiming language of the sort that Executive

3

Orders 13,467 and 12,968 use cannot support a claim for judicial relief. *See id.*; *see also Paracha v. Biden*, Civ. A. No. 04-2022 (PLF), 2022 WL 2952493, at *10 (D.D.C. July 26, 2022) ("although the Executive Order created internal obligations for the Secretaries of State and Defense, it did not create any private rights that [a litigant] can sue to enforce" (collecting additional cases)).

Even if Executive Order 13,467 applied, moreover, it would not entitle Steele to the relief that he seeks. Nothing in Executive Order 13,467 entitles an individual to receive records, much less the records Steele seeks, prior to responding to a statement of reasons. Steele argues that Executive Order 13,467 "explicitly directs the application of Executive Order 12968 as the framework by which to determine eligibility for access to classified information." Resp. at 4. While it is unclear what exactly Steele means by this or which section of Executive Order 13,467 he is citing, that is immaterial, because Executive Order 12,968 does not entitle Steele to the relief he seeks, as the Department has explained. *See* Mot. at 11-16.

Next, Steele cites Directive 5220.6, yet he does not allege that the Department has violated it. That is unsurprising—as the Department has explained, Directive 5220.6 does not entitle Steele to the relief he seeks, much less on the timetable he demands. *See* Mot. at 3-4, 15-16. Steele also mentions Security Executive Agency Directive ("SEAD") 4, but does not appear to claim that the Department has violated it, either. That is also unsurprising, as SEAD 4 provides "adjudicative criteria" to govern the ultimate decision to either grant, deny, or revoke a security clearance—it does not purport to provide detailed procedures that govern such proceedings, or else displace Directive 5220.6, much less Executive Order 10,865. Resp., Ex. 4, SEAD 4 at 1, ECF No. 10-1.

Steele's remaining APA arguments lack merit. He notes that SEAD 4 entitles individuals to "review proceedings, to the extent they are made available in [Executive Order] 12968," SEAD 4 at 3, but as explained, Executive Order 12,968 does not apply to his clearance adjudication. Mot.

4

at 11-16. His claim "that the Executive Branch always intended for the procedural process for contractors, and military members and federal government civilians to mirror each other," Resp. at 7, is belied by the fact that the Executive Branch has long understood governing Executive Orders to establish distinct processes for clearance adjudications for federal personnel and private contractors. Mot. at 14. He claims this system treats contractors "as second-class citizens," Resp. at 7, but there is nothing arbitrary or capricious about subjecting federal personnel and contractors to different systems for adjudicating fitness to handle classified information, especially given the deference the Executive is due in the field of national security. *See Changji Esquel Textile Co. v. Raimondo*, 40 F.4th 716, 723 (D.C. Cir. 2022) ("we defer to Executive Branch judgments on how best to protect national security."); *United Fed. of Postal Clerks v. Blount*, 325 F. Supp. 879, 883 (D.D.C. 1971) ("Congress has consistently treated public employees as being in different category than private employees.").

Finally, Steele does not respond to, much less dispute, the Department's observation that the information he seeks exceeds Executive Order 12,968's scope. Mot. at 16.

### B.  Steele's Due Process Claim is Meritless

Because none of the Executive Orders or agency directives that Steele cites entitle him to the relief he seeks, his due process claim fails to the extent it is derivative of those arguments. Regardless, Steele's procedural due process claim fails because he has no protected interest—a prerequisite to a procedural due process claim—in a security clearance. *See Egan*, 484 U.S. at 528 ("no one has a 'right' to a security clearance"); Mot. at 17-18.

Steele cites *U.S. Information Agency v. Krc*, 905 F.2d 389 (D.C. Cir. 1990) and *National Federation of Federal Employees v. Greenberg*, 983 F.2d 286, 290 (D.C. Cir. 1993), for the idea that "*Egan* does not foreclose valid constitutional claims." Resp. at 3. That misunderstands the

Department's position, which is not that *Egan* forecloses any judicial review of all constitutional claims,[2] but rather, that the specific constitutional claim he presents here—a procedural due process claim—fails on the merits because he has no protected liberty or property interest.

Regardless, *Krc* and *Greenberg* are inapposite. In *Krc*, the plaintiff challenged his removal, not a clearance revocation, much less any procedures used during a clearance adjudication. 905 F.2d at 397. And notably, the D.C. Circuit rejected the due process claim presented in *Krc*, concluding that "[t]he loss of some employment opportunities does not amount to an alteration of a legal right, particularly when the loss of employment flows directly from the modification of a security clearance, which itself represents only a change in the terms of an agency's exercise of its discretion." *Id*. *Greenberg* meanwhile, did not involve a due process claim at all—the plaintiff asserted violations of alleged constitutional rights against self-incrimination and to privacy. 983 F.2d at 291-95.

Perhaps recognizing the futility of his procedural due process claim premised on some protectable liberty or property interest, Steele pivots to a new theory—a stigma-plus theory. Resp. at 20-21. But Steele did not mention this theory in either his complaint or motion, and thus cannot rely on it now. *See Larsen*, 525 F.3d at 5; *Berger*, 170 F.3d at 1142; *Taitz*, 754 F. Supp. 2d at 7. At most, Steele made a breezy assertion that the denial of a security clearance would harm his reputation, which he did not then flesh out with analysis or legal authority—and then, only in an effort to show irreparable harm, not establish a claim on the merits. *See* Mot. at 11; Compl. ¶ 45,

---

[2] As the D.C. Circuit explained in *Palmieri v. United States*, 896 F.3d 579, 585 (D.C. Cir. 2018), that court has recognized "an exception to *Egan* for some constitutional claims challenging 'the methods used to gather information on which [a clearance decision] presumably will be based.'" *Id*. (citing *Nat'l Fed'n of Fed. Emps. v. Greenberg*, 983 F.2d 286, 290 (D.C. Cir. 1993)). "But the exception does not save 'a wholly frivolous constitutional claim or an immaterial one advanced solely for the purpose of' circumventing *Egan*." *Id*.

ECF No. 1; *Allen v. District of Columbia*, 969 F.3d 397, 405 (D.C. Cir. 2020) ("We do not consider arguments raised in such skeletal form.").

Regardless, a stigma-plus claim would fail on the merits. "A plaintiff makes out a stigma-plus claim when the government takes certain adverse actions and those actions create a stigma or other disability that foreclosed the plaintiff's freedom to take advantage of other employment opportunities." *Campbell v. District of Columbia*, 894 F.3d 281, 284 (D.C. Cir. 2018) (cleaned up). It is not enough to argue "that a government action led to mere difficulty finding a job." *Lea v. District of Columbia*, 22-1396 (JEB), 2022 WL 3153828, at *6 (D.D.C. Aug. 8, 2022). Steele fails to show that a clearance denial would foreclose him from obtaining a job in the same field or subject matter. Indeed, nothing in the record shows what he actually does for a living, what field he is in, or how his inability to obtain specific subcontracts would stop him from obtaining other work. All he offers on these points are bald assertions. *See TK Servs., Inc. v. RWD Consulting, LLC*, 263 F. Supp. 3d 64, 73 (D.D.C. 2017) ("But this allegation is wholly conclusory, and it is not a sufficient basis for extraordinary injunctive relief."); *cf. Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 304 (D.C. Cir. 2006) ("Unsupported or undeveloped allegations . . . will not withstand scrutiny concerning the movant's likelihood of success on the merits, thereby defeating a request for a preliminary injunction."). In any event, "the right 'to earn a living' does not extend to jobs requiring a security clearance." *Gill v. Dep't of Just.*, Civ. A. No. 15-0824 (RMC), 2016 WL 3982450, at *6 (D.D.C. July 22, 2016) (internal quotation marks omitted), *aff'd*, 875 F.3d 677 (D.C. Cir. 2017).

### C. Steele's FOIA and Privacy Act Claims are Meritless

Steele does not dispute that neither FOIA nor the Privacy Act entitle him to receive records, much less the records that he seeks, within 20 days, or on any particular timeframe. The fact that

the Department directed Steele, in a letter accompanying the statement of reasons, to submit any request for "a copy of the report of investigation" to the Department's FOIA/Privacy Act office, *see* Ltr. at 2, ECF No. 11-1 is irrelevant. Nothing in this letter (or Directive 5220.6, SEAD 4, Manual 5200.02, or Executive Order 10,865) entitles Steel to receive the records he seeks, or any records, prior to responding to the statement of reasons, or on any timetable at all. Moreover, the letter refers only to the report of investigation, without mentioning any of the other records Steele that seeks. *See id.* Steele also seems to concede that numerous aspects of his records request fail to reasonably describe the records sought, but claims an agency must seek clarification as to a confusing or unclear request. Resp. at 22. Yet the provision that he cites for this claim says no such thing—it is limited to "issues regarding fee assessment." 5 U.S.C. §552(a)(6)(A)(ii)(I).

## II.     Steele Fails to Show that the Relief Requested is Needed to Prevent Irreparable Injury

As the Department has explained, Steele fails to show that a temporary restraining order is necessary to prevent irreparable injury. Steele responds by claiming that the Department is certain to deny his clearance unless he obtains the records he seeks, Resp. at 23, but provides no basis for this speculative and conclusory assertion. Nor does he explain why established procedures, under which he may obtain discovery after responding to the statement of reasons, *see* Directive 5220.6 §§ E3.1.7, E3.1.11, are insufficient to obtain the records necessary to defend himself during the adjudicative proceedings. *See* Mot. at 12, 21.

Steele also asserts that refusing to respond to the statement of reasons will result in a denial of his clearance, Resp. at 23, but such injury would be self-inflicted, and thus cannot constitute irreparable injury. *See Safari Club Int'l v. Jewell*, 47 F. Supp. 3d 29, 35 (D.D.C. 2014) ("the harm is self-inflicted and, therefore, not the irreparable harm that supports injunctive relief"); *Second City Music, Inc. v. City of Chi.*, 333 F.3d 846, 850 (7th Cir. 2003) ("self-inflicted wounds are not

irreparable injury"); *Salt Lake Tribune Publ'g Co., LLC v. AT&T Corp.*, 320 F.3d 1081, 1106 (10t Cir. 2003) ("[w]e will not consider a self-inflicted harm to be irreparable"); *cf. Nat'l Family Planning & Repro. Health Ass'n v. Gonzales*, 468 F.3d 826, 831 (D.C. Cir. 2006) ("We have consistently held that self-inflicted harm doesn't satisfy the basic requirements for standing."). Instead, after answering the Statement of Reasons, the Directive affords Steele additional process.

That Steele must first admit or deny whether he was "arrested and charged with felony Indecent Liberties with Child by Custodian" in November 2001 or "pled guilty at an Article 15 hearing to Conduct Unbecoming an Office and a Gentlemen" in December 1998 and failed to indicate as much on his security questionnaire presents no violation of procedure or constitutional rights. Ltr. at 4, ECF No. 11-1. Instead, it is the typical procedure used at the commencement of a adjudicatory proceeding to identify the material facts allegedly in dispute, similar to the function a complaint and answer serve under the Federal Rules of Civil Procedure.

**III.     Steele Fails to Show that the Balance of Equities or Public Interest Warrant Relief**

Because the potential injuries that Steele invokes are either speculative or self-inflicted, he cannot show a favorable balance of equities, given the Department's interest in administrative finality in the national security context. Mot. at 23. His assertion that his potential injuries are not merely speculative but "probable," Resp. at 24, is conclusory and unsupported. And Steele does not address the public interest at all, except in the table of contents and header to § III. *Id.* at I, 24.

## CONCLUSION

This Court should dissolve the temporary restraining order and deny Plaintiff's request for a preliminary injunction.

Dated: December 7, 2022

Respectfully submitted,

MATTHEW M. GRAVES
D.C. Bar No. 481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

By: /s/ Bradley G. Silverman
BRADLEY G. SILVERMAN
D.C. Bar No. 1531664
Assistant United States Attorney
601 D Street NW
Washington, DC 20530
(202) 252-2575

*Attorneys for the United States of America*