**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **DAVID STEELE** ) | |
| 13205 Cabinwood Drive ) | |
| Silver Spring, MD  20904 ) | |
| ) | |
| Plaintiff, ) | |
| V. ) | |
| ) | **AMENDED COMPLAINT** |
| **DEPARTMENT OF DEFENSE** ) | **Civil Action No:  1:22-cv-03604** |
| 1000 Defense Pentagon ) | |
| Washington, District of Columbia  20301 ) | |
| ) | |
| And ) | |
| ) | |
| **DEFENSE COUNTERINTELLIGENCE** ) | |
| **AND SECURITY AGENCY** ) | |
| Building 600, 10th Street ) | |
| Fort George G. Meade, MD 20755-5615 ) | |
| ) | |
| | |
| <u>**As to each Defendant Serve:**</u> ) | |
| Matthew M. Graves ) | |
| United States Attorney for The ) | |
| District of Columbia ) | |
| 555 4th Street NW ) | |
| Washington, DC  20530 ) | |
| ) | |
| Attorney General of the ) | |
| The United States ) | |
| U.S. Department of Justice ) | |
| 10th & Constitution Avenue, NW ) | |
| Washington, District of Columbia 22314 ) | |
| ) | |
| Defendants. ) | |

<u>**FIRST AMENDED COMPLAINT FOR DEMAND FOR DECLARATORY AND**</u>
<u>**INJUNCTIVE RELIEF**</u>

For his Complaint, David Steele ("Mr. Steele" or "Plaintiff"), by the undersigned counsel,

states as follows:

1.      Plaintiff, Mr. Steele, brings this action for injunctive relief and other appropriate relief and seeks the disclosure and release of agency records improperly withheld from Plaintiff by the Defendants, the Department of Defense and its subordinate agency the Defense Counterintelligence and Security Agency, pursuant to the Privacy Act of 1974, 5 U.S.C. §552a et seq. ("Privacy Act") and the Freedom of Information Act, 5 U.S.C. §552(a) et seq. ("FOIA").

2.      On June 13, 2022, Plaintiff submitted a Privacy Act request, for the underlying documents listed in the Statement of Reasons (SOR) in order to have a meaningful opportunity to defend himself against allegations in the SOR that he cannot be trusted to handle classified information because of alleged criminal activity from over 20 years ago and allegations of falsifying material facts on his Electronic Questionnaires for Investigations Processing (e-QIP).

3.      Defendants' failure to respond to Plaintiff's FOIA and Privacy Act request and their failure to provide responsive documents, relevant or otherwise, pursuant to Executive Order 12968, 13467, SEAD 4, and in response to Plaintiff's FOIA and Privacy Act requests prevents Plaintiff from exercising his due process rights in defending himself.

4.      For the aforementioned reasons, Plaintiff brings this action before the court to enforce the release of properly requested documents in order to provide Plaintiff with a meaningful opportunity to defend himself in the administrative action.

## **PARTIES**

5.      Plaintiff is a United States citizen and a resident of Maryland.

6.      The Defendant, Department of Defense (DOD), headquartered at Washington, D.C., and its federal agencies fall under the definition of "federal government agency" within the meaning of (1) 28 U.S.C. §1346(b), 28 U.S.C. §2401(b), and 28 U.S.C. §2671, and (2) 5 U.S.C. §552(f)(1) and 5 U.S.C. §552a(a)(1).   The Defense Counterintelligence and Security Agency

(DCSA, formerly known as DODCAF) is a component of DOD, headquartered in Maryland. The Defendants are in possession, custody, and control over documents and records about Mr. Steele.

## JURISDICTION AND VENUE

7.    The Court has both subject matter jurisdiction over this action and personal jurisdiction over the Defendants pursuant to 5 U.S.C. §552(a)(4)(B), 5 U.S.C. §552a(g)(1), and 28 U.S.C. §1331.  The Court has the authority to issue declaratory and injunctive relief under 28 U.S.C § 1361.  The venue is proper in this Court pursuant to 5 U.S.C. §552(a)(4)(B), 5 U.S.C. §552a(g)(5), and 28 U.S.C. §1391 (b) and (e).  The Court has the authority to award attorneys' fees and expenses under 28 U.S.C. § 2412.

## LEGAL FRAMEWORK GOVERNING THE ADJUDICATION OF SECURITY CLEARANCE APPLICATIONS

8.    Security clearance adjudications are controlled by Executive Orders wherein the President outlines the processes for security clearance adjudications. Each federal agency has to follow the guidance provided by the President or his or her designee.

9.    The most applicable and relevant Executive Order, and where this Court's analysis should begin, can be found in Executive Order 13467. Executive Order 13467 was one of many measures taken by the Bush administration post-9/11 aimed at aligning the nation's intelligence community. Executive Order 13467 is titled "Reforming Processes Related to Suitability for Government Employment, Fitness for Contractor Employees, and Eligibility for Access to Classified National Security Information," issued June 30, 2008.[1] Executive Order 13467 is the beginning of the statutory framework because: (1) it is the most recent Executive Order on the issue; (2) it appoints the Director of National Intelligence as the Security Executive

---

[1]    For reference, Executive Orders 10865 and 12968 were promulgated February 1960 and August 1995, respectively, and Directive 5220.6 was implemented January of 1992.

Agent who promulgates all rules, policies, guidelines, and oversight for all security clearances issued under Executive Authority; (3) it explicitly directs the application of Executive Order 12968 as the framework by which to determine eligibility for access to classified information; and (4) it explicitly states that this order shall not "diminish or otherwise affect" Executive Order 10865. In other words, Executive Order 10865 provides the baseline of "procedures to individuals covered by Executive Order 10865," but Executive Orders 12968 and 13467 do not diminish those procedures; instead, they further clarify and promote uniformity.[2]

10. Executive Order 13467 is critical for multiple reasons; for starters, one of the key goals of Executive Order 13467 can be found in Section 2.1, "*Aligned System.* (a) Investigations and adjudications of covered individuals who require a determination of suitability, eligibility for logical and physical access, eligibility to hold a sensitive position, eligibility for access to classified information, and, as appropriate, contractor employee fitness shall be aligned using consistent standards to the extent possible." The common theme of consistency, fairness, and equity is found throughout the Executive Order and corroborates a finding that the procedural process for both contractors and military or federal government civilians should be the same.

11. Executive Order 13467 holds several other key definitions that, by a plain reading, would make clear that Executive Order 13467 applies the same to private contractors as it does to "Military or Civilian employees" because both are "covered individuals." See Executive Order 13467, Section 1.3(g).

12. Specifically, a "Contractor" is defined as, "[An] industrial or commercial contractor… including all subcontractors; a personal services contractor, or any other category of person who performs work for or on behalf of an agency," which fits squarely within the

---

[2] When interpreting the President's intent it is important to review other federal agency interpretations of the Executive Order in question. The IRS's guidance is found at IRM 10.23.2.1.1 wherein the authorities governing contractor access is listed, but EO 10865 is omitted.

definition of a "Covered individual," which means "a person who performs work for or on behalf of the executive branch, or who seeks to perform work for or on behalf of the executive branch." Section 1.2 clarifies that Executive Order 13467, "[A]pplies to all covered individuals," with few exceptions, none of which apply here. Section 2.4 within Executive Order 13467 goes on to state that the duties assigned to the Security Policy Board by Executive Order 12968 to consider, coordinate, and recommend policy directives for executive branch security policies, procedures, and practices are reassigned to the Security Executive Agent and that heads of agencies shall, among other tasks, "(ii) implement any policy or procedure developed pursuant to this order…"

13.    The key takeaways include: contractors are covered individuals; covered individuals are covered by Executive Order 13467; Executive Order 13467 appoints the ODNI as the Security Executive Agent; the Security Executive Agent is tasked with the responsibility listed in Section 2.3(c), detailed further below; and the Defendants fall squarely into the "agencies" contemplated by Executive Order 13467. Therefore, Defendants are required to follow guidelines and/or instructions by the ODNI/Security Executive Agent, and such guidelines and/or instructions would govern how Defendants adjudicate the Plaintiff's - a covered individual - eligibility to classified information.

14.    Furthermore, Executive Order 13467, Section 2.3 specifically calls for:

(c) The Director of National Intelligence shall serve as the Security Executive Agent. The Security Executive Agent:

(i) shall direct the oversight of investigations and determinations of eligibility for access to classified information or eligibility to hold a sensitive position made by any agency;

(ii) shall be responsible for developing uniform and consistent policies and procedures to ensure the effective, efficient, and timely completion of investigations and adjudications relating to determinations of eligibility for access to classified information or eligibility to hold a sensitive position;

(iii) may issue guidelines and instructions to the heads of agencies to ensure appropriate uniformity, centralization, efficiency, effectiveness, and timeliness in processes relating to determinations by agencies of eligibility for access to classified information or eligibility to hold a sensitive position;

(iv) shall serve as the final authority to designate an agency or agencies to conduct investigations of persons who are proposed for access to classified information to ascertain whether such persons satisfy the criteria for obtaining and retaining access to classified information or eligibility to hold a sensitive position;

(v) shall serve as the final authority to designate an agency or agencies to determine eligibility for access to classified information in accordance with Executive Order 12968 of August 2, 1995;

(vi) shall ensure reciprocal recognition of eligibility for access to classified information among the agencies, including acting as the final authority to arbitrate and resolve disputes among the agencies involving the reciprocity of investigations and determinations of eligibility for access to classified information or eligibility to hold a sensitive position; and

(vii) may assign, in whole or in part, to the head of any agency (solely or jointly) any of the functions detailed in (i) through (vi), above, with the agency's exercise of such assigned functions to be subject to the Security Executive Agent's oversight and with such terms and conditions (including approval by the Security Executive Agent) as the Security Executive Agent determines appropriate.

15.     Therefore, Executive Order 13467 provides clear guidance for the Director of National Intelligence to control the security clearance process for contractors and military and federal government civilians.

16.     Section 2.3(iii) must be read in conjunction with Section 2.3(v), which specifically cites Executive Order 12968 as the Executive Order to determine eligibility for access to classified information. Again, there is no mention of Executive Order 10865 because Executive Orders 12968 and 13467 incorporate all basic procedural rights afforded to contractors.

17.     The most important section above is paragraph 2.3(iii), which provides the Director of National Intelligence with the instruction to issue guidelines and instructions to ensure the "uniformity, centralization, efficiency, effectiveness, and timeliness in processes relating to determinations by agencies of eligibility for access to classified information or eligibility to hold a sensitive position." The Security Executive Agent Directive (SEAD) 4 is such applicable guidance.

18.     Once Executive Order 13467 is established as the most recent and controlling Executive Order in the security clearance administrative process, then SEAD 4's applicability is clear. SEAD 4 defines "covered individual" within para. D.5.d. as, "Covered individuals are not limited to government employees and include all persons, not excluded under paragraphs (a), (b), or (c) of this definition, who require eligibility for access to classified information or eligibility to hold a sensitive position, including, but not limited to, contractors, subcontractors, licensees, certificate holders, grantees, experts, consultants, and government employees." This guidance is controlling because of Executive Order 13467, paragraph 2.3(iii).

19.     In June 2017, the Director of National Intelligence issued SEAD 4. Section "A" provides the authority for the issuance of the directive and provides the necessary roadmap to understanding this issue. SEAD 4 (A) states in pertinent part:

> The National Security Act of 1947, as amended; Intelligence Reform and Terrorism Prevention Act of 2004 (IRTPA), as amended; Executive Order (EO) 10450, Security Requirements for Government Employment, as amended; EO 12968, Access to Classified Information as amended; EO 13467, Reforming Processes Related to Suitability for Government Employment, Fitness for Contractor Employees, and Eligibility for Access to Classified National Security Information; EO 13549, Classified National Security Information Program for State, Local, Tribal and Private Sector Entities; Performance Accountability Council memorandum, Assignment of Functions Relating to Coverage of Contractor Employee Fitness in the Federal Investigative Standards, 6 December 2012; and other applicable provisions of law.

20.     It is important to note that SEAD 4 is listing the derivative authorities that provide ODNI with the responsibility of establishing the processes and procedures for security clearances. However, the section should technically start at Article II, Section 2 of the U.S. Constitution which makes the President, the Commander-in-Chief, and historically the Executive Branch's national security authority is derivative of - to include security clearances.

21.     SEAD 4 starts with The National Security Act of 1947 because that act is what formally codified the Executive Branch's authority in national security matters by providing for the creation and the development of different agencies under the Executive Branch that contributed to our nation's national security. IRTPA is the act that created the Director of National Intelligence and positioned this individual at the *top* of the intelligence community framework.

22.     Executive Order 10450 was issued by President Dwight D. Eisenhower in 1953, revoking Executive Order 9835, which created a "Loyalty Review Board." More importantly, the Order expanded the definitions and conditions used to make security risk determinations.

23.     The next Executive Order listed is Executive Order 12968.  Due process rights for this process for industrial contractors was previously addressed in Executive Order 10865; however, Executive Order 12968 incorporated and expanded upon the basic rights provided for in Executive Order 10865, which explains its exclusion from SEAD 4.

24.     Executive Order 12968 provided additional guidance and efficiency for processing security clearances. It is important to review and consider the definition of "Employees" found within the order. "Employees" is defined in Section 1.1(e) as "...an expert or consultant to an agency; an industrial or commercial contractor, licensee, certificate holder, or grantee of an agency, including all subcontractors; a personal services contractor; or any other

category of person who acts for or on behalf of an agency as determined by the appropriate agency head."

25.    With SEAD 4 being issued in June of 2017, it is the most recent in time and was promulgated at a higher level than the Department of Defense; any inconsistencies or incongruent procedures must be controlled by SEAD 4. SEAD 4 specifically provides in paragraph E(1) that "The National Security Adjudicative Guidelines in Appendix A shall be used by all authorized adjudicative agencies when rendering a determination for initial or continued eligibility for access to classified information or initial or continued eligibility to a hold a sensitive position."

26.    SEAD 4 also makes it abundantly clear to whom this guidance applies, where paragraph C. (Applicability) unequivocally states, "This Directive applies to any executive branch agency authorized or designated to conduct adjudications of covered individuals to determine eligibility for initial or continued access to classified national security information or eligibility to hold a sensitive position."

27.    This becomes critical when reading para. E.6 in SEAD 4, which reads, "When an adjudicative determination is made to deny or revoke eligibility for access to classified information or eligibility to hold a sensitive position, review proceedings, to the extent they are made available in Executive Order 12968, as amended, Part 5, shall be afforded covered individuals at a minimum."

28.    Furthermore, Executive Order 12968, Part 5.2(2), specifically cites to FOIA and the Privacy Act and includes a timeline for producing records that is in line with FOIA's processing guidelines. In fact, 5 U.S.C. §552(a) et seq. provides the government with 20 days to respond to the request, and they can automatically request an additional 10 days because of

exceptional circumstances. In short, the federal statute provides 30 days for the Government to respond, which is identical to the processing timelines laid out in Executive Order 12968, paragraph 5.2(2), which states that the documents would be provided within 30 days.

29.     The requirements afforded to a Subject, both contractors and military members and civilians, have been memorialized in Executive Order 12968, 13467, and SEAD 4.   In short, these requirements are seen as so basic to a fair process that a new right is not being created.  To think otherwise would mean that the entirety of Executive Order, paragraph 5.2 would be creating a new "right" and that is not the case. Instead, it is the bare minimum to provide much-needed protections from the federal government before a final adjudication is rendered.

### Documents Produced By the Defendant Supporting Executive Order 12968, 13467, and SEAD as Controlling Administrative Process

30.     The Defendants have several documents where they interpret the guidance set forth in the Executive Orders and provide their own interpretation.  That guidance can be found in DOD Directive 5220.06 and DOD Manual 5200.02 which explains the security clearance adjudication processes from the Department of Defense's perspective.  DOD Manual 5200.02, revised October 29, 2020, provides the minimum due process rights for *all* Subjects while simultaneously providing separate paragraphs for DOD contractors and DOD civilian employees and military members.

31.     Paragraph 10.2 within DOD Manual 5200.02 is titled "Minimum Due Process Requirements Applicable to All."  The paragraph goes on to explain that "no unfavorable national security eligibility determination will be made without" the minimum due process requirements set forth in Executive Order 12968. More specifically, paragraph 10.2(b)(2) calls for informing the individual of their right to "Request the documents, records, and reports upon which the unfavorable national security determination was made. Be granted an extension to the

set timeline by the Component PSAB if requested documents, records, and reports are not provided promptly."  The paragraph continues by explaining the due process that is required for "all" Subjects.

32.   Paragraph 10.3 provides "Specific Procedures for Contractor Employees" and refers the reader to DoDD 5220.06. Paragraph 10.4 then provides "Specific Procedures For Civilian Employees and Military Members."  Effectively, the writers of the manual would not provide separate paragraphs for additional guidance for contractors and civilian employees and military members if they did not intend 10.2 to apply to everyone.  Furthermore, the title of the paragraph provides for minimum due process procedures for all, which is consistent with Executive Orders 12968 and 13467 and SEAD 4.

33.   Defendants argue that responding to an SOR is the equivalent of answering a civil complaint; however, Defendants provide a two page document with the issuance of SORs titled, "Instructions for Responding to a Statement of Reasons."[3] Section "(a)" discusses how someone should prepare their response. Paragraph 3(a)(3) specifically addresses any misleading statements that a SOR response is akin to an answer to a complaint thereby negating any need for the Subject to review the underlying documents:

> If you choose to respond [to an SOR], you should gather any documentation that supports your case. Your response and supporting documentation should be organized in the same order as the security concerns presented in the SOR. The documents that have the most impact will be those that *refute, correct, extenuate, mitigate, or update*[emphasis added] the unfavorable information presented in the SOR.  Examples of documentation include: copies of court records with details or dispositions of arrests and status of probation; transcripts of court testimony taken under oath; probation reports; copies of negotiated plea bargains; releases from judgment or wage attachment; statements of account or letters from creditors verifying the status of delinquent accounts; receipts or copies of canceled checks

---

[3]    Defendants' Reply in Support of Motion to Dissolve Temporary Restraining Order, *para. II*, wherein Defendant states, "Instead, it is the typical procedure used at the commencement of a adjudicatory proceeding to identify the material facts allegedly in dispute, similar to the function a complaint and answer serve under the Federal Rules of Civil Procedure."

for payment on debts; certificates of completion for alcohol/drug abuse rehabilitation programs; etc. *Mere statements such as "I didn't do it," "It wasn't my fault," or "I paid those bills" will not carry as much weight as supporting documentation* [emphasis added]. You may provide statements from co-workers, supervisors, your commander, friends, neighbors and others concerning your judgment, reliability and trustworthiness, and any other information that you think should be considered before a final decision is made. See Exhibit A.

34.     The SOR instructions provide details on how a Subject should write their response:

The impact of your response will depend on the extent to which you can specifically refute, correct, extenuate, mitigates, or updates each item cited in the SOR.  If you believe that unfavorable information in the SOR presents an incomplete picture of the situation or circumstances, you should provide information that explains your case.  Bear in mind that the information you provide will be considered, but it also may be verified through additional investigation.

35.     A simple "Admit" or "Deny" would not comply with the guidance provided by DCSA CAS. Furthermore, Paragraph 3(b)(4) specifically states, "The Guideline(s) aid in making a common sense decision based upon all that is known about a Subject's personal history."

36.     Finally, Paragraph 3(b)(5) provides the best evidence that a Subject *must* review the underlying documents that formed the basis of an SOR because it explicitly explains that a thorough SOR response can result in the reinstatement of a Subject's security clearance thereby negating the need for a personal appearance / hearing:

(5) When you have completed your written response…When a final decision is made, you will be notified in writing, via your organization's SMO and/or SCI SMO. If the decision is favorable, your access eligibility will be granted or restored. If not, you may appeal the decision to higher authority [the Administrative Judge].

37.     Regardless whether one attempts to apply executive orders, SEAD 4, or agency specific directives and manuals, Defendants blatantly and willfully violated the due process rights and protections offered to Plaintiff in this process.  These violations adversely affected the

Plaintiff's ability to meaningfully reply to the SOR thereby eliminating any chance that the Plaintiff could satisfy the concerns without having to appear before an Administrative Judge.

### LEGAL FRAMEWORK FOR THE FOIA AND PRIVACY ACT

38.     The Freedom of Information Act (FOIA) provides that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, *shall* make the records promptly available to any person." 5 U.S.C. § 552(a)(3) (emphasis added). Thus, FOIA creates a presumption that records held by the federal government must be produced to members of the public upon request.

39.     Section 552(d) expressly provides that it "does not authorize withholding of information or limit the availability of records to the public, except as specifically stated in this section." Thus, records may only be withheld if they fall within one of Section 552's enumerated exemptions. The only exemptions raised by Defendants in denying Mr. Steele's request for records were Exemptions (b)(5), (b)(6), and (b)(7)(C).  See Exhibit B.  The records that were released to Plaintiff were not responsive to his FOIA and Privacy Act requests.

40.     FOIA Exemption (b)(5) protects documents which are deliberative in nature and a part of the decision making process. To the extent portions of documents are truly predecisional and directly related to the Defendants' deliberations regarding the outcome of Mr. Steele's security clearance determination, Plaintiff would concede this *could*  be a valid exemption. However, for the two pages identified by Defendants as being protected by (b)(5), they also alleged exemptions (b)(6), (b)(7)(C), and Privacy Act exemption (d)(5).  Defendants also stated these two pages contained privacy-related information about a party other than Mr. Steele.

41.     Even assuming, for argument's sake, all of these exemptions applied to those two pages, the stated reasons to withhold all other responsive documents rested on two exceptions/exemptions: (1) that the requested records contained privacy-related information about a party other than Mr. Steele, and that he was not entitled to third party information under the provisions of the Privacy Act; and (2) FOIA exemption (b)(6). These reasons do not entitle Defendants to withhold entire responsive documents.

42.     Exemption (b)(6) provides that Subsection (a)(3)'s obligation to make records available "does not apply to matters that are… personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy[.]" To justify withholding or redaction of specific information contained in records, the Government must establish that the information sought to be excluded from disclosure is a "personnel [or] medical file" or a "similar" such file. 5 U.S.C. § 552(b)(6). The Defendants must then establish that specific individuals have a significant privacy interest in information contained in the requested files. *See Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 32, 33 (D.C. Cir. 2002) ("[t]he 'burden is on the agency' to show that requested material falls within" Exemption 6).

43.     If the Court finds a significant privacy interest is at stake, it must balance that privacy interest against Mr. Steele's interest and the public interest in disclosure. *Multi Ag Media LLC v. USDA*, 515 F.3d 1224, 1228 (D.C. Cir. 2008); *Nat'l Ass'n of Home Builders*, 309 F.3d at 32. The relevant public interests include an interest in information that would "shed light on an agency's performance of its statutory duties" and information that would let citizens know "what their government is up to[.]" *Multi Ag Media LLC*, 515 F.3d at 1231 (internal citation omitted). Here, disclosure of the records containing the reason(s) for which Mr. Steele was denied a security clearance would shed light on whether the agency had denied Mr. Steele for a

permissible reason within the scope of Defendants' authority, or for an impermissible reason outside the scope of its authority.

44.     In engaging in this balance, and in determining whether production of the relevant records with redactions of specific personal identifiers would be sufficient to protect identified privacy interests, the presumption in favor of disclosure is strong. *Dep't of the Air Force v. Rose*, 425 U.S. 352, 380-81 (1976); *Multi Ag Media LLC*, 515 F.3d at 1227. On information and belief, the portions of Defendants' records explaining the specific reason(s) for which Mr. Steele's security clearance was denied would not reveal any specific personal identifiers of individuals other than Mr. Steele. Alternatively, if the sections explaining why Mr. Steele's security clearance was denied mention specific personal identifiers of other individuals, the references to such personal identifiers could be redacted without likewise redacting the actual reason for which Mr. Steele's security clearance was denied.

45.     Exemption (b)(7)(C) provides that Subsection (a)(3)'s obligation to make records available "does not apply to matters that are… records or information compiled for law enforcement purposes, but *only to the extent that* the production of such law enforcement records or information… could reasonably be expected to constitute an unwarranted invasion of personal privacy" (emphasis added). As with Exemption 6, the Defendants must establish that specific individuals have a significant privacy interest in information contained in the requested files. *Bartko v. DOJ*, 898 F.3d 51, 66 (D.C. Cir. 2018); *Akin, Gump, Strauss, Hauer & Feld, L.L.P v. DOJ*, 503 F. Supp. 2d 373, 383 (D.D.C. 2007).

46.     As with Exemption 6, if the Court finds any significant privacy interest at stake, the Court must balance the identified significant privacy interest in nondisclosure against Mr. Steele's interest and the public interest in disclosure. *Mays v. DEA*, 234 F.3d 1324, 1327 (D.C.

Cir. 2000). As with Exemption 6, in performing this balancing test, courts have assessed whether the agency could redact the documents to protect individual privacy interests while releasing the remaining information. *Mays*, 234 F.3d at 1327; *Prows v. DOJ*, No. 90-2561, 1996 U.S. Dist. LEXIS 23122 at *8-9 (D.D.C. Apr. 25, 1996). On information and belief, the portions of Defendants' records explaining the specific reason(s) for which Mr. Steele's security clearance was denied would not reveal any specific personal identifiers of individuals other than Mr. Steele. Alternatively, if the sections explaining why Mr. Steele's security clearance was denied specifically mention specific personal identifiers of other individuals, the references to such personal identifiers could be redacted without likewise redacting the actual reason for which Mr. Steele's security clearance was denied.

47.    Moreover, Plaintiff is not simply a member of the public requesting access to information about third parties, but rather is an individual requesting information about *himself*. The Privacy Act provides that "[e]ach agency that maintains a system of records shall upon request by any individual to gain access to his record or to any information pertaining to him which is contained in the system [and] permit him… to review the record and have a copy made of all or any portion thereof in a form comprehensible to him[.]" 5 U.S.C. § 552a(d)(1). The Privacy Act accordingly creates a presumption that records held by the federal government that pertain to a specific individual must be made available to that individual upon request.

48.    Records may only be withheld or redacted under the Privacy Act if they fall within one of the enumerated exemptions in subsections (j) or (k), or, as in the Defendants' response to Plaintiff's request reflect, an exemption under (d)(5). Other than Defendants asserting a (d)(5) exemption to just *two pages* of intra-agency responsive documents - that it made in its December 2, 2022 response seen in Exhibit B - Defendants at no point raised *any*

Privacy Act exemption as a basis for withholding or redacting the requested information. *See* Exhibit A. This is presumably because none of the Privacy Act exemptions apply.

49.     Lastly, upon receipt of an individual's request under FOIA and/or the Privacy Act, under (a)(6)(A)(i), the agency must "determine within 20 days (excepting Saturdays, Sundays, and legal public holidays)... whether to comply with such request and shall immediately notify the person."  The time limit may be extended by written notice to the person making the request if "unusual circumstances" apply, but such extension would not be authorized to exceed ten working days.

50.     The "unusual circumstances" permitted under (a)(6)(B) of the statute would include: (1) the need to search and collect documents from offices separate from the office processing the request; (2) the need to search and collect a large volume of records; or (3) the need to consult with another agency (or a separate subdivision of the same agency) having a substantial subject-matter interest in the request.  Even if Defendants were experiencing "unusual circumstances," which Plaintiff does not concede, the Defendants were still required to provide Plaintiff written notice of any such "unusual circumstances."

51.     The deadline by which Defendants had to respond to Plaintiff's request - or at least provide written notice of their unusual circumstances - was due to Plaintiff on or about July 21, 2022. Instead, Defendants provided an inadequate, incomplete, and significantly delinquent statutorily required response to Plaintiff on December 2, 2022.  See Exhibit B.

**FACTS**

52.     On or about July 2020, Plaintiff (an independent contractor) applied for a security clearance in order to secure particular contracts with Human Domain Solutions, LLC.

53.     The contracts in question require a "secret" level of security clearance, which required Plaintiff to complete an e-QIP.

54.     As a result of Defendants' review of Plaintiff's background investigation, Defendants issued a Statement of Reasons (SOR) to Plaintiff on May 9, 2022.  See Exhibit C.

55.     The Defendants alleged, citing Guidelines J, D, and E of the Adjudicative Guidelines for Determining Eligibility for Access to Classified Information, that a felony charge from November of 2001 (which was nolle prossed in January 2002), a record of nonjudicial punishment from his time in the Marine Corps, and allegedly failing to disclose these incidents, among others, resulted in their office being unable to find that it would be clearly consistent with the national interest to grant Plaintiff access to classified information.

56.     On June 10, 2022, the undersigned counsel notified Defendants that his office had been retained by Plaintiff to assist in his response to the SOR.  See Exhibit D.  This letter also requested an extension of Plaintiff's response to the SOR due date from June 22, 2022 to August 21, 2022 (which was granted), and put the Defendants on notice that a FOIA and Privacy Act request was forthcoming.

57.     On June 13, 2022, Plaintiff sent Defendants an expedited FOIA and Privacy Act request.  See Exhibit E.

58.     On June 23, 2022, Defendants acknowledged receipt of Plaintiff's FOIA and Privacy Act request, assigning the request number DCSA-M-22-08083.  See Exhibit F.

59.     On July 22, 2022, Plaintiff followed up with Defendants via email requesting a status update of the request.  See Exhibit G.

60.     On July 22, 2022, Defendants responded to Plaintiff indicating Plaintiff's request was "pending assignment to a processor," and that "[Due] to an increase of incoming requests

and a reduction in staffing, [their] office [was] experiencing longer than normal processing times."  See Exhibit H.

61.     On August 12, 2022, with Plaintiff's response to the SOR due in just nine days but having received no records from Defendants, Plaintiff was forced to request an extension of the response's due date from August 21, 2022 to October 20, 2022.  See Exhibit I.

62.     On August 15, 2022, Defendants granted Plaintiff an extension until September 21, 2022.  See Exhibit J.

63.     On September 7, 2022, Plaintiff again inquired with Defendants regarding the status of the original FOIA and Privacy Act request.  See Exhibit K.

64.     On September 8, 2022, Defendants responded to Plaintiff's September 7 inquiry again indicating that Plaintiff's request was in the queue pending assignment to a processor.  See Exhibit L.

65.     On September 14, 2022, with Plaintiff's response to the SOR due in just seven days but having received no records from Defendants, Plaintiff was forced to request another extension of the response's due date from September 21, 2022 to October 21, 2022.  See Exhibit M.

66.     On September 15, 2022, Defendants granted Plaintiff an extension until October 21, 2022.  See Exhibit N.

67.     On October 7, 2022, Plaintiff again inquired into the status of the original FOIA and Privacy Act request.  See Exhibit O.

68.     On October 11, 2022, Defendants again indicated that Plaintiff's request was pending review, citing the same reason of "limited staffing," but also citing this time that the delay was attributed to "heighten (sic) health protections (sic) levels."  See Exhibit P.

69.     On October 14, 2022, with Plaintiff's response to the SOR due in just seven days but having received no records from Defendants, Plaintiff was forced to request yet another extension of the response's due date from October 21, 2022 to November 21, 2022.  See Exhibit Q.

70.     On October 17, 2022, Defendants granted Plaintiff an extension until November 21, 2022.  See Exhibit R.

71.     On October 28, 2022, Plaintiff again inquired into the status of the original FOIA and Privacy Act request.  See Exhibit S.

72.     On October 28, 2022, Defendants responded to Plaintiff's October 28 inquiry again indicating that Plaintiff's request was in the queue pending assignment to a processor.  See Exhibit T.

73.     On November 4, 2022, Plaintiff again inquired into the status of the original FOIA and Privacy Act request.  See Exhibit U.

74.     On November 7, 2022, Defendants responded to Plaintiff's November 4 inquiry indicating that the request had been assigned to a processor and that the request was "being worked."  See Exhibit V.

75.     On November 14, 2022, with Plaintiff's response to the SOR due in just seven days but having received no records from Defendants, Plaintiff was forced to request yet another extension of the response's due date from November 21, 2022 to December 21, 2022.  See Exhibit W.

76.     On November 16, 2022, after Plaintiff received no response from the Defendants regarding the November 14, 2022 extension request, Plaintiff's counsel's office followed up with

Defendants via email.  See Exhibit X.  Instead of granting Plaintiff's request for extension this time, the Defendants' responses deviated from the pattern of the three months prior:

    a) On November 16, 2022, Defendants indicated that the extension request was pending approval.

    b) On November 18, 2022, Plaintiff reached back out to Defendants to inquire whether a decision had been made regarding the extension request.

    c) On November 18, 2022, having no answer on the extension request, Defendants granted a modest extension to November 26, 2022.

    d) On November 22, 2022, after Plaintiff had still not received a determination by Defendants whether the November 14 extension request was approved, Plaintiff reached back out to the Defendants for clarity.

    e) On November 22, 2022, Defendants responded stating that the extension request was denied and that a full response would be due by December 1, 2022.

    77.    Plaintiff requested these records so that he may meaningfully and intelligently provide his response to the SOR so that he may have his clearance granted; granting of his clearance is a necessary step to allow him to perform his job duties for particular government contracts with employer Human Domain Solutions, LLC, a government contractor.

    78.    Over 170 days from the original FOIA and Privacy Act request - despite multiple requests, upon information and belief, the Defendants have not complied with their obligations under FOIA or the Privacy Act, leaving Plaintiff requesting multiple extensions to his deadline to respond to the SOR.  Each extension Plaintiff is required to seek due to the Defendants' unnecessary and unlawful delay results in additional weeks and months where he is left unable to work in his specialized field and results in further loss of income.

79.     Subsequent to Plaintiff filing his initial Complaint in this suit and serving Defendants, the Defendants provided a response to Plaintiff's FOIA and Privacy Act requests in the aforementioned December 2, 2022 response (Exhibit X).  The Defendants' response was deficient because none of the documents provided reference nor support the allegations listed in the SOR thereby continuing to deny the Plaintiff an opportunity to review any documents relied upon in deciding to issue the SOR. Furthermore, Defendants' response improperly withheld and/or redacted several other responsive records based on inapplicable exemptions Defendants attempted to apply.

80.     Therefore, Defendants still have an obligation to provide Plaintiff with the underlying documents that formed the basis of the SOR.

### COUNT I
**(Violation of the Privacy Act, 5 U.S.C. §552a )**

81.     Plaintiff realleges paragraphs 1 through 80 as if fully stated herein.

82.     Plaintiff is an individual seeking access to information about himself.

83.     Any documentation in the possession, custody, and control of Defendants is a record maintained in a system of records, as described 5 U.S.C. §552a(a)(4)- (5).

84.     Upon information and belief, there are records responsive to Plaintiff's request that are being withheld, and Defendants violated 5 U.S.C. §552a by failing to adhere to the specific timelines without proper or authorized justification; therefore, Defendants are wrongfully withholding records and information requested.

85.     Plaintiff has exhausted all required and available administrative remedies.

86.     Plaintiff has a legal right under the Privacy Act to obtain the information he seeks, and there is no legal basis for Defendants' denial, refusal, and/or unlawful delay of said right.

87.     Defendants' denial, refusal, and/or unlawful delay to provide Plaintiff with the requested records amounts to a deprivation of Plaintiff's rights.

88.     WHEREFORE, Plaintiff requests that this Court award him the following relief: (1) declare that Defendants violated the Privacy Act; (2) order Defendants to immediately disclose the requested records; (3) award Plaintiff reasonable cost and attorney's fees as provided in 5 U.S.C. §552a(g)(3)(B); and (4) grant such other relief as the Court may deem just and proper.

## COUNT II
### (Violation of the Freedom of Information Act-5 U.S.C. §552)

89.     Plaintiff realleges paragraphs 1 through 88 as if fully stated herein.

90.     Defendants are unlawfully withholding records requested by Plaintiff pursuant to 5 U.S.C. §552.

91.     Plaintiff has exhausted applicable administrative remedies.

92.     Defendants' actions are causing the following irreparable damages: (1) Plaintiff's professional reputation is being ruined, and (2) Plaintiff's ability to ever again work in this highly specialized field or gain comparable employment elsewhere is in jeopardy.

93.     WHEREFORE, Plaintiff respectfully requests that the Court: (1) declare that Defendants violated the Freedom of Information Act; (2) order Defendants to immediately disclose the requested records; (3) award Plaintiff reasonable costs and attorney's fees as provided in 5 U.S.C. §552(a)(4)(E); and (4) grant such other relief as the Court deems just and proper.

## COUNT III
### (Violations of the Administrative Procedures Act)

94.     The Plaintiff adopts and incorporates by reference paragraphs 1 through 93 as

fully stated.

95.     The process for issuing SORs and individuals' responses is detailed in the applicable Legal Framework section above; specifically, DODD 5220.6, DOD Manual 5200.02, SEAD 4, Executive Order 12968, and Executive Order 13467 govern and control this process.

96.     Plaintiff specifically requested the documents, records, and reports upon which his denial was based back in June 2022. There should have been no need for Mr. Steele to have even needed to make extension requests, because Executive Order 12968 and DOD Manual 5200.02 make clear Defendants were not authorized to set a due date at all for Plaintiff's response until Defendants provided Plaintiff the requested documents, records, and reports upon which the unfavorable determination was made.

97.     Second, even if Defendants believed they were entitled to set a due date, one requirement detailed within DoDD 5220.6, E3.1.4. states, "Requests for an extension of time to file an answer [to the SOR] may be submitted to the Director, DOHA, or designee, who in turn may grant the extension only upon a showing of good cause."

98.     In Plaintiff's instant action, Plaintiff requested four extensions to the due date for his response to the SOR.  Each time, Plaintiff's reason for the extension was the same: the Defendants' offices' staffing shortages have resulted in no response to his FOIA request; the Plaintiff needs and is entitled to the documents prior to responding to the SOR; therefore, the Plaintiff requested an extension until such FOIA request was properly and lawfully acted upon.

99.     In three of the four extension requests, the above reasons provided by Plaintiff were deemed by Defendants to be an adequate showing of "good cause"; however,

inexplicably, the fourth extension request was denied.

100.     As a result, upon information and belief, it appears clear the Defendants are simply looking at the number of extensions granted and making an arbitrary determination that "enough time" has been granted, despite not curing the underlying reason the extensions were requested in the first place.

101.     Such inconsistent application by Defendants of these obligations reflects arbitrary and capricious actions by the Defendants.

102.     Additionally, as the Plaintiff had not received a reply from the Defendants that his response was going to be due December 1, 2022 until November 22, 2022, this amounted to the Defendants essentially giving Plaintiff only nine days to respond to his SOR: less than half the time required by the DODD and Executive Order 12968.

103.     By applying the DOD Directives, Manuals, Executive Orders, and SEAD 4 arbitrarily and capriciously, as well as violating the timelines and guidance therein, Defendants have committed multiple violations of the APA.

104.     It is clear the Defendants are in violation of applicable and aforementioned orders, directives, and manuals with their over 140-day tardiness, and there are no exceptions, exemptions, or excuses stated or contemplated within relevant orders, directives, or manuals.

105.     It is indisputable that Plaintiff requested the aforementioned records, that no records have been provided - promptly or otherwise - and that the Defendants clearly set a due date for Plaintiff's written reply without having provided the requested records.

106.     WHEREFORE, Plaintiff is entitled to relief in the form of a declaratory order that Defendants are in violation of their regulation and an injunction compelling Defendant pursuant to the APA to follow all laws, regulations, and applicable policies.

## PRAYER FOR RELIEF AS TO COUNTS I-II

Plaintiff respectfully requests that the Court:

107.    Declare the Defendants' failure to comply with FOIA and the Privacy Act to be unlawful;

108.    Order the Defendants to conduct an independent and comprehensive search of its documents and records in response to Plaintiff's FOIA and Privacy Act Requests;

109.    Order the Defendants to produce all responsive records without further delay or charge;

110.    Enjoin the Defendants from continuing to withhold records responsive to Plaintiff's FOIA and Privacy Act Request to Defendants;

111.    Award Plaintiff attorneys fees and other litigation costs reasonably incurred in this action pursuant to 5 U.S.C. §552(a)(4)(E); and

112.    Grant such other relief as the Court deems just and proper.

## PRAYER FOR RELIEF AS TO COUNT III

113.    Declare that the Defendants violated the Plaintiff's protected constitutional rights under the Due Process Clause of the Fifth Amendment of the United States Constitution;

114.    Declare that the Defendants acted in an arbitrary and capricious manner;

115.    A preliminary and permanent injunction prohibiting Defendants from continually violating Plaintiff's constitutional rights and associated practices challenged in this Complaint and preventing Defendants from engaging in further arbitrary and capricious actions against Plaintiff; and

116.    Award Plaintiff his reasonable attorney fees, litigation expenses, and costs as allowed under applicable laws/case law, and grant such other relief as this Court deems just to the Plaintiff and his attorneys.

Dated: January 9, 2023                    Respectfully submitted,

                                          By: _Brett J. O'Brien_____
                                          BRETT O'BRIEN, ESQ
                                          DC Bar License #: 1753983
                                          NATIONAL SECURITY LAW
                                          FIRM, LLC
                                          1250 Connecticut Avenue NW
                                          Washington, DC 20036
                                          Phone:  (202) 600-4996
                                          Fax:    (202) 545-6318