UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DAVID STEELE,

        Plaintiff,

      v.

DEPARTMENT OF DEFENSE et al.

        Defendants.

Civil Action No. 22-3604 (CJN)

**REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

ARGUMENT ................................................................................................................................. 1

I.      Steele's Request Did Not Reasonably Describe the Records Sought ................................. 1

II.     Defendants Conducted an Adequate Search for Responsive Records ............................... 9

III.    Defendants Properly Withheld the Legal Memorandum .................................................. 12

IV.     Defendants Produced All Non-Exempt, Reasonably Segregable Materials ..................... 19

CONCLUSION ........................................................................................................................... 20

Defendants Department of Defense ("Department") and Defense Counterintelligence and Security Agency ("Agency"), by and through undersigned counsel, respectfully reply in support of their motion for summary judgment and oppose Plaintiff David Steele's cross-motion for summary judgment. A proposed order is attached.

## ARGUMENT

In response to Defendants' motion for summary judgment, Plaintiff David Steele limits the remaining issues in this case to four: namely, whether (1) his records request reasonably describes the records sought, (2) Defendants conducted an adequate search for responsive records, (3) Defendants properly withheld a short legal memorandum under the Freedom of Information Act ("FOIA") and Privacy Act, and (4) Defendants produced all non-exempt, reasonably segregable materials. While Steele also argues that he is eligible for attorney's fees, the parties have conferred and Steele authorizes Defendants to notify the Court that the parties agree to brief issues pertaining to attorney's fees after the Court resolves the merits of their dispute, so Defendants do not address such issues here. Steele clarifies that he does not challenge the response of any agency other than the Agency; challenges the Agency's search only insofar as it did not turn up a request from the Agency to the Defense Office of Hearings and Appeals ("Hearings Office") for the withheld legal memorandum; and does not challenge any withholding other than that of the legal memorandum. As explained further below, Steele's request did not reasonably describe the records sought, and regardless, Defendants conducted an adequate search, properly withheld the legal memorandum, and produced all non-exempt, reasonably segregable materials. For these reasons, the Court should grant Defendants' summary judgment and deny Steele's cross-motion for summary judgment.

## I.    Steele's Request Did Not Reasonably Describe the Records Sought

In moving for summary judgment, Defendants explained that Steele's records request does not reasonably describe the records sought, as both FOIA and the Privacy Act require. In doing so,

Defendants identified four deficiencies in Steele's request that rendered its description of the records sought unreasonable. First, Steele sought all records "relating" or "pertaining" to certain identified subjects, which are indeterminate and subjective terms that do not enable an agency "to determine precisely what records are being requested." *Yeager v. DEA*, 678 F.2d 315, 326 (D.C. Cir. 1982) (cleaned up). "A request for records that 'reference' certain topics might not be unreasonable" because any "responsive documents could probably be found with a simple keyword search across agency databases," but records can "pertain to," "relate to," or "concern" a topic that they do "not even discuss." *Am. Ctr. for L. & Just. v. Dep't of Homeland Sec.*, 573 F. Supp. 3d 78, 85 (D.D.C. 2021). "[S]uch expansive phrasing would sweep in any communication even remotely related to" a topic, "leav[ing] the unfortunate FOIA processor assigned to such a case in a hopeless muddle without clear guidance about what [records] are being sought." *Id.*

Second, Steele's request purports to cover the entire Department and all its components. While Steele now limits the scope of the issues in dispute to the Agency's response to his request, that is not what his request says—by its plain language, it purports to cover the entire Department, not just the Agency. *See* ECF No. 1-2 at 9. Steele cannot retroactively limit his request's scope to cure his failure to reasonably describe the records sought, as the Agency "was bound to read [his request] as drafted, not as [Steele now] might wish it was drafted." *Miller v. Casey*, 730 F.2d 773, 777 (D.C. Cir. 1984); *accord Nat'l Sec. Counselors v. CIA*, 969 F.3d 406, 410 (D.C. Cir. 2020) (same); *Am. First Legal Found. v. Dep't of Def.*, Civ. A. No. 22-1266 (TJK), 2023 WL 3767459, at *1 (D.D.C. Mar. 31, 2023) ("Nor can Plaintiff's opposition brief narrow [the] request . . . when the request's plain terms are much broader"); *Gun Owners of Am., Inc. v. FBI*, 594 F. Supp. 3d 37, 51 (D.D.C. 2022) ("these purported limitations are nowhere to be found in the request itself . . . plaintiffs may not rely on . . . their opposition brief to narrow the plain terms of their request").

Indeed, Steele seems to acknowledge that his request covered every component of the Department by asserting that other components of the Department "provided delinquent responses" to his request but "are being spared (for now)" in this litigation. Pl.'s Resp. at 4, ECF No. 28.

Third, Steele's request is not limited to records in any particular media. Rather, it seeks "all records" and "correspondence" regardless of their media, ECF No. 1-2 at 9, a factor that "only further broadened [the] request." *Am. Ctr.*, 573 F. Supp. 3d at 86. Fourth, Steele's request contains no temporal limit, a factor that courts in this District deem "important" to reasonably describing the records sought, *id.* at 87, instead covering records produced at any time. ECF No. 1-2 at 9.

In his response, Steele addresses only the first of these four points without acknowledging the other three points. Steele's argument that terms such as "relating to" or "pertaining to" do not automatically render unreasonable a request's description of the records sought thus is beside the point. His use of such indeterminate and ambiguous language was not the only factor that rendered unreasonable his description of the records sought, and Defendants do not argue that this factor alone sufficed to render his request inadequate. Rather, Steele's use of such language was but one factor out of four that, taken together, rendered unreasonable his description of the records sought.

Steele's additional counter arguments likewise are unpersuasive. First, Steele's observation that Defendants' declarants did not express any difficulty understanding his request is immaterial. Defendants' declarants explained that they did not perform the searches themselves, and nothing in their declarations provides any basis to assume that the agency employees who personally performed the searches understood precisely which records Steele sought without difficulty. *See* Greene Decl. ¶ 8, ECF No. 25-3; Alleman Decl. ¶¶ 7-10, ECF No. 25-4. They may have found the request difficult to understand, and also may have construed it broadly to provide Steele the benefit of the doubt as to the ambiguity inherent in his request.

Further, whether a request reasonably describes the records sought is an objective rather than subjective inquiry. What makes a request's description of records sought unreasonable is not whether an agency employee subjectively experiences difficulty in determining which records a request seeks, but whether the request itself provides objective criteria to make that determination. *See Gun Owners of Am.*, 594 F. Supp. 3d at 44 ("[T]he fatal flaw in Request 1 is that it provides no way to determine which of these plausible meanings to apply. The problem is not that there might be gray area or close cases when applying the request's terms—it is instead that the criteria for resolving those close calls are obscure or nonexistent."); *Am. First Legal Found.*, 2023 WL 3767459, at *1 (same); *Protect the Pub.'s Tr. v. Dep't of Lab.*, No. CV 22-2849 (TJK), 2023 WL 6160014, at *3 (D.D.C. Sept. 21, 2023) ("Plaintiff offers no criteria for how Defendant should settle on any particular meaning to apply to each of those terms"); *Am. Ctr.*, 573 F. Supp. 3d at 85 (request itself must provide "clear guidance about what documents are being sought"). Because Steele's request does not on its face provide clear guidance about the records that he seeks, whether or not Defendants' employees struggled to understand which records he sought is immaterial. Even if they perceived Steele's request to be easy to understand, it does not follow that Steele reasonably described the records sought. After all, they might have perceived his request as easy to understand because they made decisions about how to interpret it unguided by any objective criteria found in the request itself, and thus just as easily could have construed it differently, resulting in a different search for a different set of records. Likewise, they may have perceived Steele's request to seek a certain set of records when Steele himself understood his request to seek a different set of records.

For the same reasons, the mere fact that that Defendants managed to locate some records does not mean that Steele reasonably described the records sought. *See Am. First Legal Found.*, 2023 WL 3767459, at *1 ("Plaintiff has not reasonably described the records sought. And that

remains so notwithstanding any success by the [agency]'s search efforts because the requests fail on their face." (cleaned up)); *Dale v. IRS*, 238 F. Supp. 2d 99, 105 (D.D.C. 2002) ("The complaint is thus fairly subject to dismissal on that basis notwithstanding the later success of the [agency's] search efforts, given that it remains uncertain to this date what precisely the requester seeks and from what locations within the [agency]."). The problem with a request that does not reasonably describe the records sought is not necessarily that it is impossible to identify any responsive records at all, but rather, the significant zone of indeterminacy that such requests create. *See Gun Owners of Am.*, 594 F. Supp. 3d at 44; *Am. First Legal Found.*, 2023 WL 3767459, at *1. Many requests will enable an agency to locate at least a few pieces of low-hanging fruit. Were that enough to reasonably describe the records sought, this requirement would be drained of substance.

Moreover, the requirement that a request "reasonably describes [the] records" sought, 5 U.S.C. § 552(a)(3)(A), is a statutory requirement, and nothing about how an agency responds to a request can change whether or not the request itself satisfies this element of a FOIA or Privacy Act claim. *See Evans v. Fed. Bureau of Prisons*, 951 F.3d 578, 584 (D.C. Cir. 2020) ("an agency is only obligated to release nonexempt records if it receives a request that 'reasonably describes such records'"); *Ctr. for the Study of Servs. v. Dep't of Health & Hum. Servs.*, 874 F.3d 287, 288 (D.C. Cir. 2017) ("A request that 'reasonably describes' the records sought triggers an agency's obligation to search for and disclose all responsive records, unless the records fall within one of the statutory exemptions" (citations omitted)); *Citizens for Resp. & Ethics in Wash. v. Fed. Election Comm'n* ("*CREW*"), 711 F.3d 180, 185 n.3 (D.C. Cir. 2013) ("Of course, the duties that FOIA imposes on agencies . . . apply only once an agency has received a proper FOIA request. A proper request must 'reasonably describe' the records sought . . . ." (brackets omitted)).

Accordingly, the fact that Defendants conducted a search and found some records means only that they elected to go above and beyond what FOIA and the Privacy Act required of them in this case, not that Steele's request must have reasonably described the records sought. *See SAI v. Transp. Sec. Admin.*, 315 F. Supp. 3d 218, 249-50 (D.D.C. 2018) ("Even though [agency] was not required to respond to [the] Request, it nonetheless made a good faith effort to provide at least a partial response . . . . the agency would have acted well within its rights had it simply declined to conduct any search"); *Welsh v. Dep't of State*, Civ. A. No. 21-1380 (TJK), 2023 WL 2424606, at *4 (D.D.C. Mar. 8, 2023) ("The State Department's discretionary decision to go beyond its FOIA obligations . . . does not change" these obligations, so the fact "that [it] has shown that it can . . . provide [certain] information" does not mean that it "should provide such" information (quotation marks omitted)); *Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242, 258 (D.C. Cir. 1977) ("an agency may impose upon itself a more liberal disclosure rule than that required by the FOIA").

To say that a request must have reasonably described the records sought because the agency conducted a search and found some records would discourage agencies from even attempting to process unreasonably described requests to the best of their ability. That is because doing so could be taken as a concession that the request reasonably described the records sought. This would be to the detriment of requesters, who would be less likely to receive any records at all, and result in more FOIA and Privacy Act cases inundating this Court. "Penalizing agencies by holding that they waive their [failure to reasonably describe] defense if they" search for and produce some records notwithstanding a request's failure to reasonably describe the records sought "would not advance the underlying purpose of the FOIA [or the Privacy Act]—the broadest possible responsible disclosure of government documents." *Greenberg v. Dep't of Treasury*, 10 F. Supp. 2d 3, 23 (D.D.C. 1998); *see also SAI*, 315 F. Supp. 3d at 250 ("If that nothing-or-all approach were to

prevail, agencies would have a strong incentive to reject wildly overbroad FOIA requests, . . . and to refuse to make any effort to provide what they reasonably can. Nothing in FOIA or the governing law requires that agencies or the courts adopt such a counterproductive approach.").

*Haleem v. Department of Defense*, Civ. A. No. 23-1471 (JEB), 2024 WL 230289, at *8 (D.D.C. Jan. 22, 2024), does little to suggest that Steele reasonably described the records sought. True, the request at issue there was phrased virtually identically to Steele's, and the Court was "not convinced that a reasonable agency would—or that any of the agencies at issue did—have any trouble determining which records [the plaintiff] was requesting." *Id.* But the Court provided no reasoning or analysis for this conclusion, so respectfully, it has little persuasive value. And more recently, a different judge in this District concluded that a different request, also phrased virtually identically to Steele's, did not reasonably describe the records sought. *See Gebert v. Dep't of State*, Civ. A. No. 22-2939 (DLF), 2024 WL 1328439, at *10 (D.D.C. Mar. 27, 2024). There, the Court concluded that the request did not reasonably describe the records sought based on only a single factor—that it sought all records "pertaining" to certain topics. *Id.* Here, in contrast, this factor is merely one of four factors that collectively render unreasonable the description of records sought.

Last, Steele cannot rely on 32 C.F.R. § 286.5(a) to excuse his failure to reasonably describe the records sought. This regulation does not bar Defendants from raising a "failure to reasonably describe" argument without first attempting to clarify which records Steele sought. The regulation states, as relevant, that "[i]f after receiving a request the [Department] Component determines that it does not reasonably describe the records sought, the [Department] Component shall inform the requester what additional information is needed *or* why the request is otherwise insufficient." *Id.* (emphasis added). The regulation thus is phrased in the disjunctive—a component need not attempt to clarify which records a requester seeks so long as it explains "why the request is otherwise

insufficient." *Id.*; *see also Encino Motorcars, LLC v. Navarro*, 584 U.S. 79, 87 (2018) (the term "'or' is almost always disjunctive" (quotation marks omitted)); *United States v. Woods*, 571 U.S. 31, 45 (2013) (if a term is disjunctive, "the words it connects are to be given separate meanings" (quotation marks omitted)); *Dawson Chem. Co. v. Rohm & Haas Co.*, 448 U.S. 176, 201 (1980) ("The statute explicitly states that a patentee may do 'one or more' of these permitted acts, and it does not state that he must do any of them."); *Pub. Citizen v. Rubber Mfrs. Ass'n*, 533 F.3d 810, 814 (D.C. Cir. 2008) (an agency "need only satisfy one of these disjunctive conditions to qualify"). Further, the regulation imposes no time limit on when the Department must offer this explanation, and thus does not preclude the Department from doing so through a motion for summary judgment. Defendants have informed Steele why his request is insufficient through its motion for summary judgment, as Steele himself has acknowledged, *see* Pl.'s Resp. at 7 (acknowledging that through "Defendants' motion . . . Plaintiff has learned that his requests allegedly failed to reasonably describe the records sought"), and thus have complied with 32 C.F.R. § 286.5(a)'s requirements.

Even assuming that Defendants failed to comply with 32 C.F.R. § 286.5(a), that would not bar them from raising a "failure to reasonably describe" argument. That is because, as explained above, the requirement that a request "reasonably describes [the] records" sought is a statutory requirement. 5 U.S.C. § 552(a)(3)(A); *see also Evans*, 951 F.3d at 584; *Ctr. for the Study of Servs.*, 874 F.3d at 288; *CREW*, 711 F.3d at 185 n.3. And it is axiomatic that a regulation such as 32 C.F.R. § 286.5(a) cannot override a statutory requirement such as the requirement that a request must reasonably describe the records sought. *See Envt'l Def. Fund v. EPA*, 922 F.3d 446, 457 (D.C. Cir. 2019) ("A regulation can never trump the plain meaning of a statute." (cleaned up)); *Pub. Serv. Elec. & Gas Co. v. Fed. Energy Regul. Comm'n*, 989 F.3d 10, 19 (D.C. Cir. 2021) (citing this rule to reject the argument that there was "tension" between regulation and statute); *Dearth v. Lynch*,

791 F.3d 32, 44 n.7 (D.C. Cir. 2015) (a regulation "plainly cannot bar what the statute allows for" (cleaned up)). FOIA's text and D.C. Circuit precedent is unambiguous—a request is defective and thus does not trigger any duty to respond at all if it does not reasonably describe the records sought. A regulation cannot undermine this statutory requirement by excusing a failure to comply with it.

Further, nothing in 32 C.F.R. § 286.5(a) states that an agency's failure to attempt to clarify which records a requester seeks bars it from raising a "failure to reasonably describe" argument. The regulation is phrased merely as a directive to agencies, not a grant of rights to requesters. It does not entitle a requester to reformulate a defective request or obligate an agency to conduct a search in response to a reformulated request. *Cf. Alexander v. Sandoval*, 532 U.S. 275, 288 (2001) (statute contained no "rights-creating language," but was merely "phrased as a directive to federal agencies" (cleaned up)). Nothing in the regulation says that if an agency does not attempt to clarify which records a requester seeks, a court cannot rule for the agency on the ground that the request does not reasonably describe the records sought, nor can courts read such a requirement into the regulation. *See, e.g.*, *Dean v. United States*, 556 U.S. 568, 572 (2009) ("we ordinarily resist reading words or elements into a statute that do not appear on its face"); *Phillips v. Comm'r*, 851 F.2d 1492, 1498 (D.C. Cir. 1988) ("Even if the problem is real, it is not sufficient basis for this court to read into a statute provisions that are not there"); *Ruderman v. Flemming*, 261 F.2d 373, 374 (D.C. Cir. 1958) ("we can not make the regulations say what they do not say"); *Shelton v. United States*, 165 F.2d 241, 247 (D.C. Cir. 1947) ("It is not incumbent upon the courts to write regulations.").

## II.     Defendants Conducted an Adequate Search for Responsive Records

In moving for summary judgment, Defendants explained that they conducted an adequate search for records responsive to Steele's request. Steele responds that he "is not specifically stating that Defendants have performed an inadequate search, as their provided affidavits from Ms. Greene and Ms. Alleman do appear thorough." Pl.'s Resp. at 8. And while Steele asserts what he describes

as "more than a suspicion that there should be a responsive record from a non-attorney [Agency] employee requesting either a higher-level review or a legal review regarding Steele's [Statement of Reasons] that is entirely absent from the records provided," *id.*, this belief does not undermine the adequacy of Defendants' search. Steele identifies only a single document that the search did not yield—the Agency's ostensible request for the Hearings Office's review of the draft Statement of Reasons—and "[i]t is long settled that the failure of an agency to turn up one specific document in its search does not alone render a search inadequate." *Ancient Coin Collectors Guild v. Dep't of State*, 641 F.3d 504, 514 (D.C. Cir. 2011) (quoting *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003)); *see also Watkins Law & Advocacy, PLLC v. Dep't of Just.*, 78 F.4th 436, 446 (D.C. Cir. 2023) ("We have established that an agency's failure to turn up a particular document . . . does not undermine the determination that the agency conducted an adequate search for the requested records." (quotation marks omitted)); *In re Clinton*, 970 F.3d 357, 368 (D.C. Cir. 2020) (same); *Aguiar v. DEA*, 865 F.3d 730, 739 (D.C. Cir. 2017) (same).

The fact that the search did not turn up a request by the Agency for the Hearings Office's legal review of the Statement of Reasons has especially little bearing on the search's adequacy because no such document exists. "Under established procedures, in every industrial security clearance case in which [the Agency's] Consolidated Adjudication Service proposes issuance of a Statement of Reasons," an attorney at the Hearings Office "must conduct a legal sufficiency review of the draft Statement of Reasons." Supp. Greene Decl. ¶ 7. The Hearings Office's "review of a draft Statement of Reasons is not something that is specifically requested in connection with a particular draft Statement of Reasons." *Id.* "Rather, it is a mandatory part of the established workflow procedures for issuance of a Statement of Reasons." *Id.* "The purpose of this review is to assess whether there is a legally sufficient basis to deny a clearance and, if so, to edit the

Statement of Reasons to comport with admissible evidence in the case." *Id.* "This review is memorialized in a written Legal Sufficiency Memo that provides the [Agency] a Statement of Reasons to be issued as edited by the Department Counsel or a recommendation that no Statement of Reasons be issued." *Id.* "The legal sufficiency review is the initial step in the Department Counsel's preparation for the clearance hearing." *Id.*

"Accordingly, there was no specific request made by a particular [Agency] employee for a review of the legal sufficiency of the draft Statement of Reasons to Mr. Steele." Supp. Greene Decl. ¶ 8. The Agency's prior reference, in the declarant's "previous declaration, to a 'request' by [an Agency] employee for [the Hearings Office] to review the draft Statement of Reasons and provide legal advice should be understood merely as a reference to [the Agency] sending the draft Statement of Reasons to [the Hearings Office] for legal sufficiency review in accordance with established workflow procedures for producing a Statement of Reasons, not to suggest that there was a specific request for legal sufficiency review made by a particular [Agency] employee in connection with the particular Statement of Reasons at issue here." *Id.* "To the extent that the language in [the] previous declaration is read to suggest otherwise, that reading is inaccurate." *Id.*

This declaration, like all "relatively detailed and non-conclusory" agency declarations in the FOIA context, is "accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *Mobley v. CIA*, 806 F.3d 568, 581 (D.C. Cir. 2015) (quoting *SafeCard Servs., Inc. v. Sec. & Exch. Comm'n*, 926 F.2d 1197, 1200 (D.C. Cir. 1991)). Steele offers no basis to rebut the presumption of good faith that the declaration is due. Indeed, he offers no support for his assertion that a record must exist other than the language of the first declaration, which Defendants have now clarified, as well as his unsupported and speculation assertion that "[t]his is not the type of request that was made at

the water cooler or done verbally in passing." Pl.'s Resp. at 11. Such conclusory speculation is insufficient to rebut the presumption of good faith to which Defendants' declaration is entitled.

Defendants regret any confusion on this matter that the inartful language in the declarant's initial declaration may have caused, but such language should not be read to indicate that there is a particular record reflecting a request by the Agency to the Hearings Office for a legal sufficiency review of or legal advice relating to the draft Statement of Reasons issued in connection with Steele. *See Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 772 (D.C. Cir. 1981) (search was adequate where "the [agency's] affidavits assert entirely plausible reasons for the absence of the missing documents"); *Louise Trauma Ctr., LLC v. Dep't of Just.*, Civ. A, No. 20-3517 (RC), 2022 WL 278771, at *11 (D.D.C. Jan. 30, 2022) (agency "supplied two perfectly reasonable explanations for why [it] did not have any responsive records"); *Jud. Watch, Inc. v. Dep't of Just.*, 806 F. Supp. 2d 74, 79 (D.D.C. 2011) ("there could be several possible reasons other than an inadequate search for why particular records are not located"); *Jefferson v. Bureau of Prisons*, 578 F. Supp. 2d 55, 58 (D.D.C. 2008) ("The records may never have existed").

## III.    Defendants Properly Withheld the Legal Memorandum

In moving for summary judgment, Defendants explained that they properly withheld, under both FOIA and the Privacy Act, a legal memorandum regarding the legal sufficiency of a Statement of Reasons issued in connection with Steele's security clearance determination. When the Agency "determines that unmitigated derogatory concerns under the Federal Adjudicative Guidelines applicable throughout the Federal Government preclude granting eligibility for access to classified information . . . Government contractors [such as Steele] are entitled to notice of the reasons why it would not be clearly consistent with the national interest to grant or continue a security clearance." Supp. Greene Decl. ¶ 5. "Applicants also are afforded the opportunity to appear at a hearing before a [Hearings Office] Administrative Judge where [Hearings Office] attorneys . . .

present the Government's case in support of denial and clearance applicants have the opportunity to rebut the allegations and offer evidence of mitigation." *Id.* "Prior to the hearing, applicants are issued a Statement of Reasons that provides notice of the security concerns." *Id.* "A Statement of Reasons is similar to a pleading and initiates the established administrative process." *Id.*

As to FOIA, Defendants properly withheld the legal memorandum under Exemption 5 based on both the attorney-client and deliberative process privileges. The attorney-client privilege protects the legal memorandum because it is an attorney-client communication providing legal advice. The deliberative process privilege protects the legal memorandum, meanwhile, because it is part of the deliberative process by which the Agency makes a decision on whether or not to determine Steele to be eligible for access to classified information. *See* Supp. Greene Decl. ¶ 7; Defs.' Mem. at 15-22. As to the Privacy Act, meanwhile, Defendants properly withheld the legal memorandum under Exemption (d)(5) because it was compiled in reasonable anticipation of a civil action of proceeding. *See* Supp. Greene Decl. ¶ 7; Defs.' Mem. at 38-29.

Steele does not appear to dispute that FOIA Exemption 5 protects the legal memorandum. He provides no substantive response to Defendants' argument that the attorney-client privilege protects the legal memorandum. He instead stresses only that Defendants did not expressly invoke the attorney-client privilege in their administrative response to his request, but "[i]t is well-settled that an agency may prevail on an exemption that it has raised either at the agency level or in the district court." *Bayala v. Dep't of Homeland Sec.*, 827 F.3d 31, 34 (D.C. Cir. 2016) (cleaned up); *see also Barnard v. Dep't of Homeland Sec.*, 598 F. Supp. 2d 1, 25 (D.D.C. 2009) ("there is no requirement that an agency administratively invoke an exemption in order to later rely on it in federal court"); *Young v. CIA*, 972 F.2d 536, 538 (4th Cir. 1992) ("an agency does not waive FOIA exemptions by not raising them during the administrative process").

Tellingly, Steele does not otherwise address Defendants' argument that the attorney-client privilege protects the legal memorandum. Thus, the Court may regard the facts that underlie this argument as undisputed. *See* Fed. R. Civ. P. 56(c), (e)(2) (party opposed to summary judgment has burden to show "that a fact . . . is genuinely disputed," and "[i]f a party . . . fails to properly address another party's assertion of fact . . . the court may . . . consider the fact undisputed for purposes of the motion"); *Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 507 (D.C. Cir. 2016) ("the District Court [may] consider a fact undisputed if it has not been properly supported or addressed" (cleaned up)); *Grimes v. District of Columbia*, 794 F.3d 83, 92 (D.C. Cir. 2015) ("a court must be able to evaluate an inadequately supported assertion of material fact and deem it not materially disputed, such that summary judgment is warranted in whole or in part"). Further, because Steele "admit[s] that . . . if an item falls under [the] 'attorney client privilege' that it would satisfy both [FOIA Exemption] (b)(5) and [Privacy Act Exemption] (d)(5)," Pl.'s Resp. at 14, the fact that the attorney-client privilege protects the legal memorandum is dispositive here—it compels the conclusion that Defendants properly withheld the legal memorandum under both FOIA and the Privacy Act.

Nor does Steele appear to dispute that the deliberative process privilege protects the legal memorandum. Instead, he argues only that Privacy Act Exemption (d)(5) "does not incorporate the deliberative process privilege." Pl.'s Resp. at 12. That is true enough, but immaterial. The fact that the deliberative process privilege protects the legal memorandum means that FOIA Exemption 5 covers the legal memorandum whether or not the Privacy Act also covers the legal memorandum.

Steele's argument that Privacy Act Exemption (d)(5) does not cover the legal memorandum is unpersuasive. Privacy Act Exemption (d)(5) protects all "information compiled in reasonable anticipation of a civil action or proceeding." 5 U.S.C. § 552a(d)(5). This provision applies to all "documents prepared in anticipation of quasi-judicial hearings." *Martin v. Off. of Special Counsel*,

819 F.2d 1181, 1188 (D.C. Cir. 1987) (emphasis omitted). While the D.C. Circuit has not specified with precision what makes an administrative proceeding "quasi-judicial" in nature, it has held that at a minimum, an administrative hearing is quasi-judicial so long as it is "adversarial, include[s] discovery proceedings, and [is] subject to the rules of evidence." *Id.* (citation omitted). This Court need not decide whether all or any of these factors are necessary for an administrative hearing to be "quasi-judicial," as security clearance hearings before the Hearings Office satisfy all of them.

Steele concedes that security clearance "hearings before [the Hearings Office] are certainly adversarial." Pl.'s Resp. at 15. And contrary to his assertions, these hearings provide for discovery. Such discovery encompasses non-privileged documents and other materials subject to the Hearings Office's control and cross-examination of witnesses, either orally or else through interrogatories. *See* Dep't of Def., Dir. 5220.6, *Defense Industrial Personnel Security Clearance Review Program* ("Directive") §§ 3(6), 4(a), E3.1.10, E3.1.11. E3.1.16 (Jan. 2, 1992).[1] As such, Steele's assertion that "discovery is virtually non-existent" in security clearance hearings, Pl.'s Resp. at 13, is simply incorrect. While the hearings do not provide the full scope of discovery available under the Federal Rules of Civil Procedure, the D.C. Circuit has never held that that is necessary for an administrative hearing to be "quasi-judicial" for purposes of Privacy Act Exemption (d)(5). To the contrary, the D.C. Circuit held that an administrative hearing offered sufficient discovery to be "quasi-judicial" where a regulation provided that "[t]he Federal Rules of Civil Procedure may be used as a general guide for discovery practices in proceedings before the Board" but "[t]hose rules, however, are instructive rather than controlling." 5 C.F.R. § 1201.72(a); *Martin*, 819 F.2d at 1188. Here too, the discovery in Hearings Office proceedings suffices to qualify these proceedings as quasi-judicial.

---

[1]      Enclosure 3 of the Directive is codified at 32 C.F.R. Part 155 App. A.

Finally, security clearance hearings "are subject to the rules of evidence." *Martin*, 819 F.2d at 1188. "The Federal Rules of Evidence . . . shall serve as a guide," "[r]elevant and material evidence may be received subject to rebuttal, and technical rules of evidence may be relaxed . . . to permit the development of a full and complete record." Directive § E3.1.19. Further, "[o]fficial records or evidence compiled or created in the regular course of business, other than [ ] personnel background reports of investigation [ ], may be received and considered by the Administrative Judge without authenticating witnesses." *Id.* § E3.1.20. Although Steele emphasizes that "the rules of evidence are simply used as guidelines," Pl.'s Resp. at 13, the D.C. Circuit has never held that the Federal Rules of Evidence must apply in full for an administrative hearing to be quasi-judicial. To the contrary, the D.C. Circuit has held that an administrative hearing qualified as quasi-judicial where statute merely allowed agency administrative judges, officers and employees to "administer oaths, examine witnesses, take depositions, and receive evidence." 5 U.S.C. § 1205(b)(1) (1982); *Martin*, 819 F.2d at 1188. And even then, the D.C. Circuit deemed the statute to offer a sufficient rather than necessary level of evidentiary formality in administrative proceedings. For all these reasons, security clearance proceedings before the Hearings Office are quasi-judicial in nature, and thus trigger Privacy Act Exemption (d)(5)'s protections.

Moreover, the Hearings Office also reasonably anticipated that Steele might seek judicial review of any eventual denial of a security clearance. Supp. Greene Decl. ¶ 9. Although Steele correctly observes that "security clearance determinations are not reviewable by the judiciary," Pl.'s Resp. at 13 (citing *Dep't of Navy v. Egan*, 484 U.S. 518 (1988)), that does not stop dissatisfied clearance-seekers from filing meritless challenges to their security clearances denials, suspensions, and/or revocations in federal court, sometimes arguing that constitutional (as opposed to statutory) challenges to clearance decisions are judicially reviewable. *See* Supp. Greene Decl. ¶ 9 (despite

*Egan*, "individuals who are dissatisfied with their adverse security clearance decisions not infrequently seek judicial review of such decisions, nonetheless"); *see also, e.g.*, *Palmieri v. United States*, 896 F.3d 579, 582 (D.C. Cir. 2018) (constitutional challenge to a clearance revocation); *Oryszak v. Sullivan*, 576 F.3d 522, 524 (D.C. Cir. 2009) (same under the Administrative Procedure Act); *Gebert*, 2024 WL 1328439, at *1 (constitutional challenge to clearance revocation); *Haleem*, 2024 WL 230289, at *1 (same); *Deryck v. Dep't of Def.*, Civ. A. No. 22-3290 (TNM), 2023 WL 3303832, at *5 (D.D.C. May 8, 2023) (same). Accordingly, the mere fact that security clearance decisions are judicially unreviewable and that judicial challenges thereto are meritless if not frivolous does not mean that the Hearings Office lacked a reasonable basis to anticipate that Steele might seek judicial review of an adverse security clearance decision. The fact that these lawsuits are meritless does not mean that litigants do not bring them. And Privacy Act Exemption (d)(5) asks only whether a record is "compiled in reasonable anticipation of a civil action or proceeding," 5 U.S.C. § 555a(d)(5), not whether it is compiled in reasonable anticipation of losing a civil action.

Steele's reliance on Privacy Act Exemption (k)(2) is misplaced, as this provision does not limit the scope of Privacy Act Exemption (d)(5). Privacy Act Exemption (k)(2) permits an agency to exempt certain "investigatory material compiled for law enforcement purposes" from the scope of Privacy Act's access mandate. 5 U.S.C. § 552a(k)(2). This exemption is subject to a limitation, however: "if any individual is denied any right, privilege, or benefit that he would otherwise be entitled by Federal law, or for which he would otherwise be eligible, as a result of the maintenance of such material, such material shall be provided to such individual" except in certain enumerated circumstances. *Id.* But this language is located within the specific statutory subsection that creates, and thus is limited to, Privacy Act Exemption (k)(2) itself. As such, this language does not limit the scope of, or indeed have anything to do with, Privacy Act Exemption (d)(5). *See Res. Mgmt.*

*Concepts, Inc. v. SBA*, Civ. A. No. 20-3416 (RCL), 2022 WL 971311, at *4 (D.D.C. Mar. 31, 2022) (noting "the 'scope-of-subparts' canon, pursuant to which, at least as a general proposition, material within an indented subpart relates only to that subpart" (cleaned up)); Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 156 (2012) (same). Steele thus cannot rely on Privacy Act Exemption (k)(2) to limit the scope of Privacy Act Exemption (d)(5).

Lastly, Defendants demonstrated that disclosing the legal memorandum foreseeably would harm interests that the attorney-client and deliberative process privileges protect. As Defendants explained in moving for summary judgment, the harm attorney-client communications is virtually self-evident. *See* Defs.' Mem. at 16-19. Steele does not address this point, which independently suffices to meet the foreseeable harm requirement. Regardless, Defendants offered three additional rationales to support a foreseeable harm showing—disclosure would (1) "make individuals aware of potential arguments that they might raise in administrative and/or judicial fora to challenge their denials of eligibility for access to classified information," (2) "enable individuals to circumvent security clearance adjudication guidelines," and (3) "reveal highly sensitive, graphic, disturbing, and salacious facts." Defs.' Mem. at 19-20. Steele criticizes the second of these three rationales, arguing that the clearance adjudication process "is supposed to be transparent" and there should be no "secret playbook." Pl.'s Resp. at 15. Steele's point is well-taken, and Defendants withdraw this rationale. But Steele does not address the first rationale, and concedes that the third rationale "may be an acceptable reason under FOIA." Pl.'s Resp. at 16. These two rationales independently suffice to satisfy FOIA's foreseeable harm requirement, and Steele does not argue otherwise. He argues only that the third rationale "is wholly inapplicable under a Privacy Act analysis," *id.*, but the Privacy Act contains no foreseeable harm requirement. *Compare* 5 U.S.C. § 552(a)(8)(A)(i)(I)

(an agency must show that it "reasonably foresees that disclosure would harm an interest protected by an exemption" unless a statute prohibits disclosure), *with id.* § 552a (no such requirement).

## IV.    **Defendants Produced All Non-Exempt, Reasonably Segregable Materials**

In moving for summary judgment, Defendants explained that they have produced all non-exempt, reasonably segregable materials. Steele concedes that Alleman's declaration "meet[s] the legal requirements" for satisfying the segregability obligation, but argues that Greene's declaration "is woefully deficient." Pl.'s Resp. at 9-10. This is so, Steele contends, because although Alleman attested that her office conducted a "page-by-page and line-by-line review" of responsive records for any non-exempt, reasonably segregable material, "[s]uch assurance is not claimed or given by Ms. Greene in her declaration." *Id.* at 10 (emphasis omitted, quoting Alleman Decl. ¶ 23). That is simply incorrect.[2] Greene attested that her office "conducted a page-by-page, line-by-line review of all information contained in the responsive records and ha[s] released all reasonably segregable, non-exempt information. Where [her office] identified any non-exempt, reasonably segregable information in records containing some withheld information, it produced [such] information to Mr. Steele." Greene Decl. ¶ 21. FOIA requires nothing more. *See Porup v. CIA*, 997 F.3d 1224, 1239 (D.C. Cir. 2021) (agency satisfied its segregability obligation where it "attested that [it] had conducted a page-by-page and line-by-line review, and released all reasonably segregable, non-exempt information within responsive records," and "determine[ed] that no additional information may be released without divulging information that falls within the scope of one or more FOIA exemptions" (cleaned up)); *Machado Amadis v. Dep't of State*, 971 F.3d 364, 371-72 (D.C. Cir. 2020) (agency "appropriately segregated exempt and non-exempt portions" of responsive records

---

[2]       Steele's error on this point may be due to the fact that the language at issue appears on the signature page of Greene's declaration, which is scanned and thus not text searchable.

where it "conducted a line-by-line review, determined that some non-exempt, factual information

. . . could be segregated for release, and redacted only" exempt information (cleaned up)).

## CONCLUSION

This Court should grant Defendants summary judgment and deny Steele's cross-motion

for summary judgment.

Dated: July 5, 2024                                       Respectfully submitted,

                                                          MATTHEW M. GRAVES
                                                          D.C. Bar #481052
                                                          United States Attorney

                                                          BRIAN P. HUDAK
                                                          Chief, Civil Division

                                                   By:   */s/ Bradley G. Silverman*
                                                          BRADLEY G. SILVERMAN
                                                          D.C. Bar #1531664
                                                          Assistant United States Attorney
                                                          601 D Street NW
                                                          Washington, DC 20530
                                                          (202) 252-2575
                                                          bradley.silverman@usdoj.gov

                                                          *Attorneys for the United States of America*